## CENTRAL OF GEORGIA RAILWAY COMPANY v. ALLEN.

The motion for nonsuit was properly denied.
                                    JULY 19, 1913.

Action for damages.   Before Judge Bell.   Fulton superior court. January 10, 1912.

The assignment of error relied on for a reversal is upon the judgment refusing a nonsuit. The plaintiff was an employee, and the defendant was his employer. The action was for damages on account of injuries alleged to have been received through the negligence of the servants of the defendant in operating its trains. The injury occurred at a public crossing, known as "McCall's," where

a street crosses defendant's line of railroad tracks on a grade level, between four and five o'clock in the morning of October 26, 1910, when it was dark. Over this crossing the defendant had three parallel main-line tracks, numbers one, two, and three, about eight feet apart. There was a parallel side-track east of them, and another parallel side-track west of them. At the time of the injury the plaintiff was a night watchman at the crossing, and it was his duty "to keep anybody out of the way of trains passing, and to keep trains that were passing over the crossing from hitting people, wagons, and buggies, and when people were coming and a train was coming I would wave the people back; if the people wanted to cross and there were no trains coming, I would let them cross. My duties there as a watchman was to keep people and trains from coming into collision on that crossing and from hitting each other; and I got $40 per month for that." The plaintiff was on duty at the crossing. Two sections of a circus train were going out of Atlanta. He had let one by, and the other was approaching about 60 feet away. He was standing near the side of main-line track number 3, and noticed a pedestrian coming from the opposite side of main-line track number one, intending to go over the crossing. The pedestrian attempted to cross the railroad track, and the plaintiff waved him down. "He looked like he was going to come anyhow, and I stepped on the first line to start that way" to stop him, "and about that time I was knocked down" by one of the defendant's engines which, without giving any signal by blowing a whistle or ringing a bell, backed over the crossing of track number 3 at a high rate of speed without displaying a rear light. The plaintiff's testimony was somewhat confused as to his position when struck, he stating at one time that he was in one place on the crossing, and at another that he was in a different place; but he offered explanation and testified, "I am positive, though, that I was between the east-side track and the third main line when I was struck. I was on the west side of the three main lines when I was hit." He did not see the engine which struck him until it had gone beyond the crossing where it stopped, at which time he noticed the headlight from where he was lying, and the members of the crew picked him up. The pedestrian already referred to testified that he did not see the headlight on the back of the engine, and did not hear any signal, and did not see the engine until it struck

the plaintiff; that it was running about thirty or thirty-five miles an hour; and that the circus train, which was nearly opposite, was not running over 20 miles an hour. The grounds of negligence alleged were, that the defendant's "agents and servants who were operating said switch-engine were negligent in running upon and over said crossing at a rapid and unlawful rate of speed, to wit, thirty miles an hour; and were negligent in not ringing the bell of said engine or giving some kind of warning of the approach of said engine on the crossing."

Little & Powell, for plaintiff in error.

Westmoreland Brothers, contra.

ATKINSON, J. By statute in this State, before the adoption of the act approved August 16, 1909 (Acts 1909, p. 160, Civil Code, §§ 2782 et seq.), common carriers by railroad were liable for injuries to their employees resulting from negligence attributable to the employer where the injured employee was without fault. This law was amended by the act above mentioned, and since the amendment it is no longer essential that the injured employee must have been without fault, but he may recover provided the injury was not brought about "by his own carelessness, amounting to a failure to exercise ordinary care," or if he could not have avoided the consequences of defendant's negligence "by the exercise of ordinary care." But in cases where the negligence of the employee in some degree, less' than indicated above, contributed to the injury, he may recover diminished damages. In the Civil Code, § 3131, it is also provided that "A servant assumes the ordinary risks of his employment, and is bound to exercise his own skill and diligence to protect himself." Where there is no express contract on the subject, whatever risk the employee of a railroad company assumes can be no more than the "ordinary risk" of the particular business in which he is employed. It will not extend to an unusual danger which, in the ordinary course of the business as conducted, would not naturally occur. In *Georgia R. &c. Co.* v. *Rhodes, 56 Ga.* 645, which was a suit for damages on account of an injury to a baggage-master on a train, it was held: "Such an employee assumes the risks necessarily incident to his occupation, but not such as result from the negligence of his coemployees." The negligence of the coemployees had reference to the operation of two trains which resulted in their collision, causing plaintiff's injury. In *Lawhorn* v.

*Millen & Southern R. Co.,* 97 *Ga.* 742 (25 S. E. 492), it was ruled: "Even if a train employee, who by reason of his having full knowledge that the track of a railroad was in a dangerously defective condition and had so remained for a considerable period, can be held to have thereby assumed all risk of injury necessarily incident to riding, while engaged in his work, upon a train when being run in the usual manner and at the usual rate of speed, yet where upon a given occasion he was injured by a derailment of a car upon which he was riding in the due course of his employment, and, on the trial of an action against the railroad company for the injury thus sustained, proved affirmatively that the train at the time of the injury was being run at a dangerous rate of speed around a sharp curve, it was at least incumbent on the defendant to show that such rate of speed at the point in question did not exceed that at which the train had usually been run at this place." In that case a judgment granting a nonsuit was reversed. While that was not the case of a watchman at a crossing, nevertheless the ruling is an application of the law relative to the assumption of risks by railroad employees, and furnishes an example illustrative of unusual risks which are not assumed. In the later case of *A., K. & N. R. Co.* v. *Tilson,* 131 *Ga.* 395 (62 S. E. 281), a judgment refusing a nonsuit was sustained. Mr. Justice Lumpkin, in the course of the opinion, used the following language: "While an employee assumes the ordinary risks of a dangerous occupation, it could hardly be said that carelessness on the part of the engineer in the operation of his engine, or on the part of the company in regard to its track, of which he had no notice, was one of the usual and ordinary risks assumed by a 'freight hand' in the discharge of his duty, so as to present a legal bar to a recovery by him, under our statute allowing a recovery by an employee of a railroad who is not at fault, and who is injured by negligence of other employees." In the present case the plaintiff's duty as watchman was to remain at the crossing, where there were a number of railroad tracks over a street in a city at a grade level, to prevent injury to persons and things by defendant's trains. There appeared to him imminent danger of a catastrophe, described in the statement of facts, which he was attempting to prevent, when a switch-engine moving backward on a different track, without rear lights, or giving warning, and running at 35 or 40 miles an hour over the crossing, struck him

before its presence was discovered. While it was his duty to watch for trains on all the tracks, there was no evidence that this manner of operating switch-engines at that place was usual, or even that it had ever occurred before. In running in the manner described the switch-engine was running in violation of a statute in regard to giving signals at street crossings (Civil Code, § 2677), and was dangerous. Under all the circumstances the judge did not err in refusing to take the case from the jury on the question of assumption of risks by the plaintiff, or negligence of the defendant.

*Judgment affirmed. All the Justices concur.*