# LOUISVILLE & NASHVILLE RAILROAD CO. *v.* BARRETT.

1. Where a widow institutes an action against a railroad company for the homicide of her husband, and the petition alleges facts sufficient to show a cause of action under the State law, and makes no reference to any engagement of the deceased person in interstate commerce, and the defendant files an answer which merely denies "as untrue" the several paragraphs of the petition, such denial does not extend beyond a denial of the facts specifically alleged.

   (*a*) Where in such an action the defendant desires to defeat the widow's right to sue, by proof of facts tending to show that at the time of the catastrophe her husband was engaged in interstate commerce under his employment by the defendant, it is incumbent upon the defendant to specifically plead such new facts.

   (*b*) In the absence of such a plea it is not erroneous to repel evidence relied on to show that the plaintiff's husband was engaged in interstate commerce under his employment by the defendant, on the ground that the plea does not raise such question.

2. In this case it was shown that at the time of the homicide the plaintiff's husband was on duty, under his employment by the defendant, as a watchman at a grade-crossing where the railroad-tracks crossed a street in a city. The only duty of the watchman appears to have been to protect travelers on the street from the danger of injury by trains on the crossing. At the time of the catastrophe he was engaged in warning travelers on the street of the approach of a freight-train coming from the south, when a passenger-train on a parallel track, approaching unobserved by him from the north, struck and killed him. The passenger-train plied between Tate, Georgia, and Atlanta, Georgia. The freight-train plied between Atlanta, Georgia, and Etowah, Tennessee, and carried freight for intermediate points in Georgia, but it was not shown to have carried freight to points beyond the limits of the State. *Held,* that the evidence was insufficient to show that the plaintiff's husband was engaged in interstate commerce; and there was no error in refusing to charge the jury that as a matter of law he was so engaged, and that for such reason the plaintiff could not recover.

3. The evidence concerning the employment of the watchman and his duties was not of such character as to demand a finding that he assumed the risk of danger to himself from the defendant's negligent operation of its trains at the crossing; and the charge which in effect submitted to the jury the question whether the watchman assumed the risk of the danger which resulted in his death, constituted no error of which the defendant could complain.

4. The evidence was sufficient to make out a prima facie case, and there was no error in overruling the motion for nonsuit.

5. The blow-post law being applicable, an instruction that "you are to take into consideration all the facts and circumstances in the case—the place where the occurrence took place, its publicity,. the amount of travel across the railroads at that place, the amount of care and caution which these required of the defendants—that they be on the lookout and to have their locomotives under control—the diligence or want of diligence

shown to have been exercised in respect to these matters at this time and place," was not erroneous on the ground that it invaded the province of the jury, in that in effect it instructed them that it was the duty of the defendants to "be on the lookout and to have their locomotive under control."

6. This being an action against a railroad company for the homicide of one of its employees, alleged to have been committed by the negligence of the servants of the defendant in the operation of one of its trains, it was erroneous to charge the jury, as applicable to the case, the provision of the Civil Code relating to the statutory presumption against railroad companies arising in such cases upon proof of injury.

(a) The evidence did not demand a verdict for the plaintiff, and the error in the charge was sufficient to require the grant of a new trial.

                          JULY 21, 1915.

Action for damages.  Before Judge Patterson.  Cobb superior court.  January 13, 1914.

*D. W. Blair* and *C. II. Griffin,* for plaintiff in error.
*Clay & Morris,* contra.

ATKINSON, J.  1.  In this case a widow instituted an action against a railroad company for damages on account of the homicide of her husband, who was alleged to have been killed by a train on the defendant's railroad while he was engaged as watchman at a grade-crossing in a city, under employment of the defendant, to warn travelers on the highway of the approach of trains.  A verdict having been rendered for the plaintiff, the defendant made a motion for new trial, and excepted to the judgment denying the motion.  In one ground of the motion complaint is made of the exclusion of certain evidence offered by defendant and relied on to show that at the time of the catastrophe the defendant, as a common carrier, was engaged in interstate commerce, and that when plaintiff's husband was killed he was, under his employment by the defendant, engaged in such commerce.  Whether the excluded evidence would have been sufficient to show that he was so engaged need not be decided.  The evidence was repelled on the ground that the plea of defendant did not authorize the introduction of evidence on that subject.  There was no error in this ruling.  When the case was before this court on a former occasion (*Barrett* v. *Louisville & Nashville R. Co.,* 137 *Ga.* 572, 73 S. E. 837), it was held that the petition set forth a cause of action.  That decision dealt with the petition under the viewpoint of the State statute. There was no allegation in the petition to the effect that defendant was engaged in interstate commerce or that plaintiff's husband was

so employed. The facts relied on as a basis for the cause of action were set forth in separate and distinct paragraphs, as required under prescribed rules of practice for that court. Civil Code, § 5539. The answer contained no reference to the first paragraph of the petition, but mentioned all of the other paragraphs by number, and, with reference to them, merely said they "are each and all denied as untrue." In the Civil Code, § 5634, it is declared: "In all cases when the defendant desires to make a defense by plea or otherwise, he shall therein distinctly answer each paragraph of plaintiff's petition, and shall not file a mere general denial, commonly known as the plea of 'general issue.' He may in a single paragraph deny any or all of the allegations, or in a single paragraph admit any or all of the allegations in any or all of the paragraphs of the petition." Under this law the plea by defendant did not extend beyond a denial of the truth of the allegations of fact made in the petition. To hold otherwise would be to declare of no effect the provision prohibiting the filing of a "general denial, commonly known as plea of 'general issue.'" While a widow is authorized to sue under the State law, the right to sue under the Federal employers' liability act (35 U. S. Stat. 65, c. 149) is in the legal representative of the deceased person. There are other differences between the State law and the Federal law, which need not be mentioned. The court having jurisdiction to try a case against a railroad company for the homicide of one of its employees would apply the State law or the Federal law accordingly as it might legitimately appear that the employee, at the time of the injury, was engaged in intrastate or interstate commerce. Illinois Cent. R. Co. *v.* Doherty, 153 Ky. 363 (155 S. W. 1119, 47 L. R. A. (N. S.) 31); Mo., Kan. & Tex. R. Co. *v.* Wulf, 226 U. S. 570 (33 Sup. Ct. 135, 57 L. ed. 355, 32 Ann. Cas. (1914B) 134). In the case of *Gainesville Midland Railway* v. *Vandiver,* 141 *Ga.* 350 (80 S. E. 997), it was said: "In pleading a cause of action, where a domestic statute or that of the United States is relied on, it is unnecessary to incorporate in the pleadings a statement of the law upon which the cause of action is based. If it is incorporated, the reference thereto may be stricken as surplusage." Also: "In an action for damages against a railroad company for personal injuries to an employee, where the petition sets forth the relation between the injured person and the railroad company, and describes the cir-

cumstances under which the injury occurs, making out a case of negligence upon the part of the defendant, but contains no allegation that the defendant was engaged in interstate commerce at the time of the injury, the petition is amendable by setting forth allegations to that effect." While it was ruled, in the cases cited above, that it was unnecessary under the circumstances to specially plead the statute, it was not ruled that it was unnecessary to plead facts which might be relied on to show that the case fell within the operation of one statute or the other. Owing to the difference between the State statute and the Federal statute and the circumstances under which the one or the other should be applied, facts of this character go to the substance of the case, and can not be judicially recognized as can be the substance of the statutes. Upon examination of the allegations of the petition in connection with the denial set up in the answer, as already observed, while there was an issue between the parties as to liability under the State law, there was no suggestion of an issue as to liability under the Federal law. But in view of the differences in the State law and the Federal statute on the subject of injury to employees of railroad companies, and considering how one law or the other might be applicable exclusively according to the facts of the case, the mere introduction of new facts into the case, being tried as it was under the State law, to the effect that plaintiff's husband was engaged in interstate commerce, would show that the plaintiff was not a proper party to sue, and result in a defeat of her recovery. Such result would not be for lack of evidence to sustain the allegations of the petition, which were denied by the plea, but wholly on account of new facts. In effect, the new facts would furnish ground for avoiding a case for the plaintiff, properly made out, based on allegations in the petition and denials in the answer. Under the circumstances, the fact that the employee might have been engaged in interstate commerce would be matter of avoidance. *Greaves* v. *Middlebrooks,* 59 *Ga.* 241 (2). In the Civil Code, § 5636, it is declared: "Under a denial of the allegations in the plaintiff's declaration, no other defense is admissible except such as disproves the plaintiff's cause of action; all other matters in satisfaction or avoidance must be specially pleaded." Under the circumstances there was no error in repelling the evidence on the subject of engagement in interstate commerce. See Bradbury *v.* Chicago etc. R.

Co., 149 Iowa, 51 (128 N. W. 1, 40 L. R. A. (N. S.) 684) ; Roberts, Injuries to Interstate Employees, § 161, p. 280. In the case of St. Louis &c. R. Co. *v.* Seale, 229 U. S. 156 (33 Sup. Ct. 651, 57 L. ed. 1129, 33 Ann. Cas. (1914C) 156), evidence was admitted without objection, to the effect that the injured person was engaged in interstate commerce at the time of the catastrophe; and the court held, that, as the Federal statute superseded the State law, "the case pleaded was not proven and the case proven was not pleaded," and, the point having been duly made on the trial, the objection did not come too late. That case did not involve the statutes of this State in regard to requirements and effect of pleadings, nor was the decision based on any ruling on the admissibility of evidence, as in the case now under consideration, where, at the threshold, the evidence was repelled. This may also be said of the ruling in Toledo &c. R. Co. *v.* Slavin, 236 U. S. 454 (35 Sup. Ct. 306, 59 L. ed.).

2.   Notwithstanding the exclusion of the evidence referred to in the preceding division, other evidence was admitted without objection, which defendant contended was sufficient to show that plaintiff's husband was engaged in interstate commerce at the time he was killed. Based on such contentions a request was made to charge: "In this case I charge you, under the facts in evidence, the defendant railroad company was engaged in interstate commerce, and the deceased, Charles Newton Barrett, was employed in interstate commerce at the time of the alleged killing; and the plaintiff has no right to any recovery against the railroad company, but that the right of action as against the railroad company, if any, would be in the personal representative of the deceased, and your verdict would be in favor of the company." It appeared from the evidence that the plaintiff's husband was employed by the defendant and the Western and Atlantic Railroad Company as a watchman at a grade-crossing in the City of Marietta, where the railroad tracks of both companies cross Kennesaw Avenue; and that it was his duty "to protect the crossing—to protect the people who were crossing there from being injured by the passing of trains." Immediately before the homicide, as one of the defendant's freight-trains approaching from the south was about to pass over the crossing, the watchman who was on duty gave a signal of warning to a traveler on the street, who, approaching from the west, was about

to pass over the crossing. He then turned to warn another traveler on the street, who was approaching the crossing from the east, and, as he did so, a passenger-train of defendant on a different parallel track, coming unobserved from the north, struck and killed him. The freight-train was going from Atlanta, Georgia, to Etowah, Tennessee, and carried freight between points in Georgia; but whether it had freight for points beyond the State of Georgia does not appear. The passenger-train was one operated between Tate, Georgia, and Atlanta. This evidence was insufficient to show that the plaintiff's husband was engaged in interstate commerce, within the meaning of the Federal employer's liability act, at the time of the catastrophe; and there was no error in refusing to charge as requested. In the case of Pedersen v. Delaware etc. Ry., 229 U. S. 146 (33 Sup. Ct. 648, 57 L. ed. 1125, 33 Ann. Cas. (1914C) 153), the following appears from the statement of facts embodied in the opinion delivered by Mr. Justice Van Devanter (three of the Justices dissenting) : "The defendant was operating a railroad for the transportation of passengers and freight in interstate and intrastate commerce, and the plaintiff was an iron-worker employed by the defendant in the alteration and repair of some of its bridges and tracks at or near Hoboken, New Jersey. On the afternoon of his injury the plaintiff and another employé, acting under the direction of their foreman, were carrying from a tool car to a bridge, known as the Duffield Bridge, some bolts or rivets which were to be used by them that night or very early the next morning in 'repairing that bridge,' the repair to consist in taking out an existing girder and inserting a new one. The bridge could be reached only by passing over an intervening temporary bridge by James Avenue. These bridges were being regularly used in both interstate and intrastate commerce. While the plaintiff was carrying a sack of bolts or rivets over the James Avenue bridge, his way back to the Duffield bridge, he was run down and injured by an interstate passenger-train, of the approach of which the engineer negligently failed to give any warning." It was held that at the time of the injury the plaintiff was engaged in interstate commerce within the meaning of the Federal employers' liability act. In the course of the opinion it was said: "That the defendant was engaged in interstate commerce is conceded; and so we are only concerned with the nature of the work in which the plaintiff was employed at the time

of the injury." In the discussion it was mainly argued by the majority that the bridge in which the bolts were to be used was an indispensable instrumentality for the conduct of the defendant's business in carrying on interstate commerce, and that the work of carrying bolts to repair the bridge was so closely connected with defendant's engagement in interstate commerce as to become a part of it. In *Louisville & Nashville R. Co.* v. *Kemp,* 140 *Ga.* 657 (79 S. E. 558), the injured employee was foreman of a force of section hands in charge of a section of defendant's railroad. His duties required him to inspect and maintain the tracks and roadway upon his section, over which trains engaged in both interstate and intrastate commerce were accustomed to run. While on a tour of inspection of the tracks he was confronted with an emergency produced by the sudden appearance of a freight-train carrying interstate freight, and, in an effort to remove the hand-car on which he was riding from the track and avoid the impending danger to himself and his hand-car as well as to the freight-train, he was injured. Following the decision in the case of Pedersen *v.* Delaware etc. R. Co., supra, it was held that the plaintiff, at the time of receiving the injury complained of, was engaged in interstate commerce. To make a similar ruling in the case now under consideration would require an extension of the rulings in the cases cited. In the first place the duties of the watchman, under his employment, were primarily for the safety of the public, and do not appear to have extended to any control of the movements of the train, or to have extended to repairs or physical maintenance of any of the defendant's indispensable instrumentalities of commerce, such as a railroad bridge, tracks, or the like. In the second place it does not appear that the freight-train, on account of the approach of which the watchman was warning pedestrians not to come upon the tracks, was engaged in carrying freight to points beyond the limits of this State, or that the passenger-train which inflicted the injury was engaged in interstate commerce. On these facts the case is not controlled by the ruling in the cases cited, and the doctrine of those cases will not be extended. See Erie R. Co. *v.* Jacobus, 221 Fed. 335.

3. Other grounds of the motion for new trial complain of the ruling of the court admitting in evidence a copy of the ordinance of the City of Marietta, prohibiting railroads, on pain of being fined, from running trains within the city limits at a greater rate

of speed than ten miles per hour; and of a charge to the effect that the city had authority to pass ordinances of such character, and that, as to persons other than employees of the company, it would be negligence to violate the ordinance, but submitting to the jury the question whether as to an employee the violation would be negligence. The objection urged to the admissibility of the evidence was that it was irrelevant, especially in view of the relation existing between the deceased and the defendant. Ordinarily it is negligence for a railroad company to operate its trains within the limits of a city at a greater rate of speed than that prescribed by a valid municipal ordinance. *Central of Georgia Railway Co.* v. *Tribble,* 112 *Ga.* 863 (38 S. E. 356). But it is urged that the ordinance was irrelevant, because the watchman, by reason of his relation to the defendant, assumed the risk of danger from the speed of the trains at the crossing, and consequently that the defendant was under no duty to him to observe the requirements of the ordinance. Other evidence was introduced on the subject of the speed of the train at the time the injury was inflicted, which would have authorized a finding that the train was running at an unusual rate of speed, in a negligent manner in violation of the city ordinance. Under such circumstances it can not be held as a matter of law that the watchman assumed the risk. See *Central of Georgia Railway Co.* v. *Allen,* 140 *Ga.* 333 (78 S. E. 1052). The effect of the charge on this subject was merely to submit to the jury the question whether, under the evidence, the watchman assumed the risk of the danger which resulted in his death. It is not necessary to decide whether the evidence demanded a finding that the watchman did not assume the risk of the employment; but even if it did not demand such a finding, yet, being sufficient to authorize a finding to that effect, it was not error against the defendant to charge as already indicated. Similar objections were urged, in the motion for new trial, to a charge on the subject of the statutory duty of railroad companies in operating their trains at public crossings. The ruling above announced applies also to this ground of the motion, and further reference thereto is not required.

4. Error was assigned upon a ruling refusing to grant a nonsuit upon the conclusion of the plaintiff's evidence. As the case will go back for another trial, the evidence will not be discussed. A careful examination, however, shows that there was no error in overruling the motion for nonsuit.

5.  Another ground of the motion for new trial complains of the charge: "As to whether or not the defendants were negligent in this case, or whether or not the negligence of the defendants was the cause of the death of the plaintiff's husband, are questions solely for you to determine from the evidence in the case, as well as the question of negligence or want of ordinary care and diligence on the part of the deceased. In determining these questions you are to take into consideration all the facts and circumstances in the case—the place where the occurrence took place, its publicity, the amount of travel across the railroads at that place, the amount of care and caution which these required of the defendants—that they be on the lookout and to have their locomotives under control —the diligence or want of diligence shown to have been exercised in respect to these matters at this time and place." The criticisms upon the charge were: (*a*) that it was an inaccurate statement of the law; (*b*) it invades the province of the jury, and in effect tells them that it was the duty of the defendants to "be on the lookout and to have their locomotives under control." It was urged in the brief of counsel for the plaintiff in error that the first criticism upon the charge was meritorious, for the reason that, as the watchman had assumed the risk of danger, the company did not owe him any duty to look out for him at the crossing. This contention is disposed of by the ruling announced in the third division of this opinion. In support of the second criticism upon the charge, counsel for plaintiff in error rely upon the decision announced in the third headnote in the case of *Louisville & Nashville R. Co.* v. *Biggs,* 141 *Ga.* 562 (81 S. E. 900), where it was held that a charge on the subject of the duty of the engineer and fireman of a railroad train at public crossings was erroneous. There was a substantial difference, however, in the charge there held to be erroneous and the one involved in this case; in the former the jury were instructed: "I charge you that it is the duty of the engineer and fireman, when not otherwise engaged, to keep a lookout ahead for persons and things that may be upon the track or crossing or attempting to cross the same, or dangerously close thereto; and to use all ordinary care and diligence to prevent injuring and damaging them or either of them. In this case, if they negligently failed to do so, and the injury and damage to the mares resulted in consequence of such negligence, then the company would be liable; but if they did this, or were not

negligent in failing to do it, then the company would not be liable on that account, although the mares may have been frightened by the train and injured and damaged in consequence thereof." The ruling relative to such instruction was: "It has been frequently held by this court that it is erroneous for the judge to charge the jury that certain acts or omissions of the defendant constitute negligence, when such acts or omissions are not negligence per se." It will be observed that the charge there involved was not merely as to the duty of the servants to "look out" for persons and things at the crossings, but it went beyond and instructed them in effect that certain things which would not amount to negligence per se would show negligence upon the part of the defendant's servants, thereby invading the province of the jury. It is provided in the Civil Code, § 2675, that: "There must be fixed on the line of said roads and at a distance of four hundred yards from the center of each of such road crossings, and on each side thereof, a post, and the engineer shall be required, whenever he shall arrive at either of said posts, to blow the whistle of the locomotive until it arrives at the public road, and to simultaneously check and keep checking the speed thereof, so as to stop in time should any person or thing be crossing said track on said road." This statute necessarily implies the duty of the engineer to look out and to have the locomotive under control in approaching the crossing; and the court could properly so instruct the jury without invading their province.

6. Another ground of the motion for new trial complains of the charge: "A railroad company shall be liable for any damage done to persons, stock, or other property by the running of the locomotives or cars or other machinery of such company, or for damage done by any person in the employment and service of such company, unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company." The criticisms upon the charge were, (a) that it was inapplicable to the plaintiff's case; (b) that the plaintiff was not entitled to this charge against defendants or either of them. The action was against the railroad company and its engineer who operated the train that killed the watchman. The homicide occurred on the 24th day of October, 1908, before the adoption of the act of 1909 (Acts 1909, p. 160). The charge relates to the statutory presumption provided

in the Civil Code, § 2780. The presumption provided for in that section of the code does not arise against the engineer. *Louisville & Nashville R. Co.* v. *Hames,* 135 *Ga.* 67 (68 S. E. 805). But the engineer is not complaining, and the mere fact that the statute was applied to him would not afford the railroad company any ground for new trial. In suits of the character now under consideration, the statute which the court gave in charge to the jury does not apply. *W. & A. R. Co.* v. *Jackson,* 113 *Ga.* 355 (38 S. E. 820). See also Hopkins on Personal Injuries, § 240 et seq. Under these authorities, in actions against a railroad company for an injury to its employee, the plaintiff could make out a prima facie case by proving the injury and that he was free from fault, or by proving the injury and that the injury was caused by the negligence of the agents and servants of the defendant, as alleged in the petition. By giving in charge the law relative to the statutory presumption, the court relieved the plaintiff of the burden of showing affirmatively either the negligence charged against the defendant or that the watchman was free from fault. The evidence did not demand a verdict for the plaintiff, and the error in the charge affords ground for a new trial.

*Judgment reversed. All the Justices concur.*