[S. F. No. 7818.    In Bank.—December 14, 1916.]

## SOUTHERN PACIFIC COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION OF THE STATE OF CALIFORNIA, Respondent.

RAILROAD — INTERSTATE COMMERCE — TRACK USED FOR INTERSTATE AND INTRASTATE COMMERCE—REPAIR OF TRACK.—A railroad track used indiscriminately by a carrier in both its interstate and intrastate commerce is an instrumentality of interstate commerce, and notwithstanding its double use, those engaged in its repair or in keeping it in suitable condition for use are, while so engaged, employed in interstate commerce.

ID.—KEEPING TRACK IN CONDITION FOR USE.—Any work having for its immediate object, in whole or in part, the keeping of the track in condition for use according to schedule for interstate traffic has such a close and direct relation to interstate transportation as to be practically a part of it.

ID.—WATCHMAN AT RAILROAD CROSSING—DUTY TO KEEP TRACK UNOBSTRUCTED—INJURY FROM INTRASTATE TRAIN—LIABILITY OF RAILROAD MEASURED BY ACT OF CONGRESS.—A watchman employed by a railroad at a point where its main line track, used indiscriminately for both interstate and intrastate commerce, was crossed by a public street, whose duties in part required him to keep the track free of such obstructions to the interrupted passage of all trains according to schedule as might be caused by passing vehicles, is engaged in interstate commerce, and the state Industrial Accident Commission has no jurisdiction to award compensation for personal injuries to him occasioned while he was endeavoring to prevent a collision between an intrastate train and a vehicle on the track. The liability of the railroad in such case is measured entirely by the act of Congress of April 22, 1908, relative to the liability of common carriers by railroad to their employees in certain cases.

ID.—AVOIDANCE OF INJURY TO PUBLIC.—The fact that the avoidance of injury to the public in the matter of crossing the track was also one of the objects of the watchman's employment is immaterial.

APPLICATION for a Writ of Certiorari to review an award of the Industrial Accident Commission of the State of California.

The facts are stated in the opinion of the court.

Henley C. Booth, and A. L. Clark, for Petitioner.

Christopher M. Bradley, for Respondent.

ANGELLOTTI, C. J.—This is a proceeding to review an award against petitioner made by the Industrial Accident Commission to Jessie Leslie Rolfe, widow of Thomas C. Rolfe, on account of the death of the latter by reason of accident arising out of and happening in the course of his employment by petitioner. The only question is whether Rolfe was employed in interstate commerce at the time of the accident. If he was, concededly the commission was without jurisdiction to make any award, the liability of the petitioner in such case being measured entirely by the provisions of an act of Congress of April 22, 1908, relative to the liability of common carriers by railroads to their employees in certain cases. If he was not employed in interstate commerce at the time of the accident the award must be affirmed.

There is no dispute as to the material facts. Petitioner is engaged in the business of a common carrier by railroad of passengers and freight in commerce between and among the states of California, Arizona, and New Mexico and other states, and also between points in this state, using its tracks and equipment indiscriminately for both interstate and intrastate commerce. The coast division, one of its main lines, extends southerly from San Francisco through San Mateo, San Jose, and other places to Los Angeles, Tucson (Arizona), and El Paso (Texas). In San Mateo petitioner maintained at a point where the tracks crossed a certain public street, crossing gates and a crossing watchman. On July 27, 1915, deceased, Rolfe, was the crossing gateman or watchman employed by petitioner at this point. At this time more than sixty trains a day were being operated by petitioner over said crossing, some intrastate and others interstate. The duty of deceased was to close these gates upon the approach of a train in order to prevent access to the track by vehicles and thus to prevent a collision between a train and a vehicle, and generally to prevent injury from trains to those having occasion to pass over the crossing. He had power to stop trains at such point by signal when he deemed it necessary in the discharge of these duties. The evidence tended to show that at the time of the accident a train known as the San Jose local, running from San Francisco to San Jose, approached said crossing, that deceased had closed one of the gates and then discovered that a horse and wagon had come within the range of the other gate so that he could not lower it without strik-

ing either horse or wagon, and that he started across the track with the intention of backing the horse and wagon away. He was struck by the engine and killed.

There was evidence introduced before the commission to the effect that the employment of crossing gatemen and flagmen was as much for the protection of the railroad company as for the public; that protection of a crossing meant safety to the train as well as the traveler on the highway; that such an employee facilitated the movement of trains by keeping the track clear, the slightest accident demanding a stop and investigation; that a derailment of a train might well be caused by the striking an automobile or motor truck; that a derailment interferes with the traffic not only at the place of derailment but also all along the line; and that main line schedules are built up in part, as far as speed is concerned, on the character of crossings, as to whether they are protected by gatemen or flagmen or not. No evidence was given in conflict with any of this.

It will be conceded for the purposes of this discussion that the particular train was purely intrastate in character.

Under these circumstances, was deceased employed in interstate commerce at the time of the accident? As was said in *Chicago, Burlington & Quincy R. Co.* v. *Harrington,* 241 U. S. 177, [60 L. Ed. 941, 36 Sup. Ct. Rep. 517, 11 N. C. C. A. 992], the "true test of employment in such commerce is, was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it?" The substantial ground for petitioner's claim that deceased was then engaged in interstate transportation is that he was engaged in keeping one of its instrumentalities of interstate commerce in condition for the carrying on of that commerce; or to put it in a more concrete way, that he was then engaged in keeping petitioner's tracks at the crossing clear and unimpeded for the passage according to schedule of interstate passengers and freight carried by petitioner. It is settled by the decisions of the United States supreme court, the ultimate authority on such a question as the one before us, that a railroad track used indiscriminately by a carrier in both its interstate and intrastate commerce is an instrumentality of interstate commerce, and that notwithstanding its double use, those "engaged in its repair or in keeping it in suitable condition for use" are, while so engaged,

employed in interstate commerce. Such work, it is said, "is so closely related to such commerce as to be in practice and in legal contemplation a part of it." (See *Pedersen* v. *Delaware etc. R. R. Co.*, 229 U. S. 146, [Ann. Cas. 1914C, 153, 57 L. Ed. 1125, 33 Sup. Ct. Rep. 648, 3 N. C. C. A. 779].) So there can be no question as to the character of the work where an employee is engaged in direct work upon an instrumentality in actual use for purposes of interstate commerce, such as actually repairing the railroad track or doing thereon any work designed to keep it in suitable condition for use. Thus it is clear that one employed in actually removing from the track any obstacles to the passage of trains caused by a derailment or other accident, would be employed in interstate commerce, in view of the decisions of the United States supreme court. He would be directly engaged in the repair of and putting again into condition for use that instrumentality of interstate commerce. The question here is, in the light of the evidence, a very narrow one, and is simply whether the principle of these decisions is applicable to one whose duties are in part to keep the track free of such obstructions to the uninterrupted passage of trains according to schedule as may be caused by passing vehicles. So far as the relation of such an employee to one attempting to cross the track is concerned, it may be conceded that there is no ingredient of interstate commerce, and that if the only consequence to be avoided by the employment was that of injury to *such a person*, the act of Congress relied on would not be applicable. But in the light of the evidence it seems to us that the scope of the employment in which deceased was engaged at the time of the accident was broader, and extended to keeping the track itself in suitable condition for use as an instrumentality of interstate commerce. In view of the evidence, the work of such a crossing gateman or flagman so far as the railroad is concerned, is similar, in principle, to that of the track-walker, whose duty it is to see that the track is in safe condition for the passage of trains, to that of the employee in the signal tower, whose duty it is to supervise and give the signals for the passage of trains, and to that of the employee engaged in repairs on the automatic signal apparatus with which this petitioner's line is equipped. All such employees may fairly be said, it seems to us, to be directly engaged, in substantial

part, at least, in keeping the track in suitable condition for use.

There is, of course, no analogy between the case of one so engaged, and that of a trainman engaged in the operation of an exclusively intrastate train. The duties of the latter are solely with reference to the operation and safety of the particular train on which he is engaged, and he has no duty whatever to perform in regard to keeping any instrumentality of interstate commerce in condition for use. Such is the full scope of his employment, and it has no relation whatever to interstate commerce, close or otherwise. The duties of deceased, as we have seen, had to do directly with the keeping of an instrumentality of interstate commerce in suitable condition for the use of such commerce. And exactly as in the case of one engaged in repairing such an instrumentality after injury thereto has occurred, who concededly is engaged in interstate commerce, it is immaterial whether or not any interstate traffic was *immediately* to be had over the same. The deceased was actually engaged at the moment of the accident in protecting that instrumentality from injury. His situation in this regard was, in view of the evidence, the same as it would have been if he had been one of a number of guards stationed along the line of railroad to prevent third persons from removing the rails or unlawfully placing obstructions on the track. Certainly their work would not be held to be unrelated to the safety of the track as a highway of interstate commerce. While the exact question has not been decided by the supreme court of the United States so far as we have found, certain language of that court in the recent case of *Texas & Pacific R. Co.* v. *Rigsby* (decided April 17, 1916), 241 U. S. 33, [60 L. Ed. 874, 36 Sup. Ct. Rep. 482], is significant. It was said: ''The doing of plaintiff's work and his security while doing it, cannot be said to have been wholly unrelated to the safety of the main track as a highway of interstate commerce; for a failure to set the brakes so as temporarily to hold the 'bad order' cars in place on that track would have been obviously dangerous to through traffic; while an injury to the brakeman had a tendency to cause delay in clearing the main line for such traffic. Perhaps upon the mere ground of the relation of his work to the immediate safety of the main track plaintiff's right of action might be sustained.'' In the light of what has already been decided

by that court, we are of the opinion that any work having for its immediate object, in whole or in part, the keeping of the track in condition for use according to schedule for interstate traffic has such a close and direct relation to interstate transportation as to be practically a part of it, and that such work as deceased was engaged in at the time of his death was work of this character. The fact that the avoidance of injury to the public in the matter of crossing the track was also one of the objects of his employment is not material to the question before us.

It follows that in view of the act of Congress relied on, the accident commission was without jurisdiction to make any award on account of the death.

The award of the accident commission is annulled.

Sloss, J., Shaw, J., Lorigan, J., Henshaw, J., and Melvin, J., concurred.

LAWLOR, J., Dissenting.—I dissent.

I think the deceased watchman was not engaged in work so closely related to interstate commerce as to be a part of it. Unless he was so employed at the precise time of the accident, the commission had jurisdiction to award compensation. It is urged in support of the petitioner's claim that the deceased was at that time engaged in interstate commerce for the reason that his work had for its immediate object, in whole or in part, the keeping of the track in suitable condition for use according to schedule for interstate traffic—that, in fact, a derailment, or even a slight delay, to an intrastate train may interfere with the interstate traffic at other points along the line. But in my view this argument applies with equal force to the character of the work performed by the trainmen upon the local itself. In the case of either, it is conceivable that the work may be so negligently performed as to cause a congestion of traffic upon the railway, thereby delaying trains carrying interstate commerce. But this is not the true test, for it is well settled that trainmen employed upon a train carrying intrastate commerce exclusively are not engaged in interstate commerce simply because the movement of the train over an interstate highway may bear some relation to the movement of interstate trains.

In this case, it was the duty of the watchman to safeguard the lives of the public using the streets, as well as the passengers traveling upon the petitioner's trains. At the time of the accident he was engaged in preventing a collision between the San Jose local and the horse and wagon. If the performance of such duty had any relation to interstate commerce, I think the burden was upon the petitioner to prove it. That is, the petitioner ought to have shown that the watchman, in the situation presented, should have reasonably contemplated that the result of the collision would actually be to interfere with the passage according to schedule of interstate trains. No such evidence was offered. It is shown that train No. 102, a through train to New Orleans, left San Francisco at 5 P. M., while the San Jose local left twenty minutes later. It does not appear, however, when an interstate train, going in either direction, was scheduled to pass the crossing after the accident, which happened at 5:57 P. M. Furthermore, there is no showing that a derailment might be caused by the train striking a horse and wagon. Indeed, the slight delay resulting from stopping to investigate such a collision would, under ordinary circumstances, probably not have interfered, even in a remote sense, with interstate traffic. Upon the record presented here, I think it must be held on principle that the watchman was engaged in work related purely to intrastate commerce, and that the possible bearing of the accident upon the interstate commerce carried by the petitioner is too remote to deprive the state of jurisdiction. (*Louisville & N. R. Co.* v. *Barrett,* 143 Ga. 742, [85 S. E. 923].)

Nor is the contrary view supported by the authorities. It is true, under the decisions of the United States supreme court, that men employed in the repair of bridges, tunnels, station-houses, coal-pits, overhead trolley wires, and the like, where such instrumentalities are used indiscriminately by carriers of both interstate and intrastate commerce, are engaged in interstate commerce. The reason is clear, since the very labor and materials the workman performs or uses in making repairs promote the operation of trains carrying interstate commerce. A workman, for instance, replacing a broken rail on a bridge over which interstate trains must pass, is directly engaged in the performance of a duty for the protection of such trains. The mere fact that other trains carrying only intrastate commerce may also pass over the same

bridge does not make the rail any the less a part of an instrumentality of interstate commerce. But the watchman's work here at the time of the collision may or may not have affected the interstate commerce of the petitioner.

*Texas & Pacific R. Co.* v. *Rigsby,* quoted in the majority opinion, is also to be distinguished from the case before us. The sole question determined by the supreme court in that case was whether it was "beyond the power of Congress under the commerce clause of the Constitution to create such a liability in favor of one not employed in interstate commerce" as it had attempted to create by virtue of the Safety Appliance Act. The provisions of that act expressly apply "to all trains, locomotives, tenders, cars, and similar vehicles used on any railroad engaged in interstate commerce, . . . and . . . used in connection therewith." The court merely held that, in the exercise of its plenary power to regulate commerce among the several states, and because of the interdependency of all trains using the same track, Congress could adopt such an act—that for the proper protection of interstate trains it had authority to regulate the appliances of all cars "used upon a highway of interstate commerce, irrespective of the use made of any particular car at any particular time." As the court declared, "in this respect there is no distinction dependent upon whether the suitor was injured while employed or traveling in one kind of commerce rather than the other."

But the broad power of Congress to require safety appliances upon all trains operating upon a highway of interstate commerce has no relation to the liability of a railroad company to compensate employees injured in the performance of their work by means other than defective or unsafe appliances. This was the conclusion reached in *Boyle* v. *Pennsylvania R. Co.,* 228 Fed. 266, [142 C. C. A. 558]. In that case an inspector of both interstate and intrastate trains, having just completed his inspection of a train which was engaged at the time in intrastate commerce, was injured by being struck by a second intrastate train approaching from an opposite direction. It was contended that his employment was so closely related to interstate commerce as to be a part of it. One of the considerations urged was "that the prompt and safe movement of an intrastate train is so necessary to the safety and unimpeded movement of interstate trains moving

over the same track, that inspection of the intrastate train becomes a part of interstate commerce.'' As in our case, reliance was placed upon the decisions of the federal courts under the Safety Appliance Act. But the court, in holding that such decisions were not ''authority for the contention so broadly made, that acts which are primarily intrastate, become interstate in their nature when they affect the safety or movement of interstate commerce,'' made this pertinent remark: ''While the movement of an intrastate train, like the use of any intrastate instrument, may in some measure affect the safe movement of interstate commerce, we believe that in the present case, the inspection of such an intrastate train is so remotely related to interstate commerce that under the tests prescribed by the supreme court it cannot be considered a part of it.'' The court held that the injured inspector could not recover compensation under the Federal Employers' Liability Act. And so, here, the employment of the watchman *at the time of the accident* was so remotely related to interstate commerce as not to be a part of it. The award of the commission should therefore be affirmed.