NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

MARY McTIGUE, PETITIONER, v. THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, RESPONDENT.

**Employe, Night Watchman on a Pier, was Drowned While on Duty—Sole Question is Whether Employe was Engaged in Intrastate or Interstate Commerce—Pier was Used Wholly in Handling Interstate Merchandise—Held, That the Business was Interstate, and Recourse Must be Had to Federal Employers' Liability Act.**

On petition for compensation. On determination, statement of facts and rule for judgment.

For the petitioner, *Raskin, Hornstein & Ruskin* (by *Victor Ruskin*).

For the respondent, *W. H. Failing* (by *Walter F. Nivison*).

\*       \*       \*       \*       \*       \*       \*

Decedent was employed by the respondent as a night watchman on piers 10 to 15, inclusive, at the Communipaw terminal of said respondent at Jersey City, New Jersey. These piers bordered on the North river. The duties of said decedent were generally to watch said piers, to check the arrival and departure of boats to and from said piers, to guard against fire and theft on said piers and to protect such piers and other railroad property and freight contained thereon or connected therewith. In the evening of December 17th, 1925, decedent reported for work at his usual hour of six o'clock in the evening and continued to perform his duties as watchman until about nine-thirty or ten P. M., at which time he was missed from his station. The fact of his absence was duly reported and a search instituted, but no trace of him was found until March 7th, 1926, on which date his body was found floating in the North or Hudson river at the end of pier 18, not far from the place where he was last seen alive. It further appears that shortly prior to his disappearance he had told a fellow-watchman that he was going to an office on pier 14 to put away his lunch.

It was undisputed that the death of the decedent was caused by drowning, nor was it contested that the accident arose out of and in the course of decedent's employment. The sole issue, therefore, was whether at the time of his accident the decedent was engaged in intrastate commerce or in interstate commerce, for it is clear that if he was engaged in interstate commerce at such time the New Jersey Workmen's Compensation act would have no application and petitioner's sole remedy, if any, would be under the Federal Employers' Liability act. *Rounsaville* v. *The Central Railroad Company of New Jersey*, 90 *N. J. L.* 176; *New York Central Railroad Co.* v. *Winfield*, 244 *U. S.* 147.

In this proceeding the burden was on the petitioner to prove affirmatively that at the time of the accident the decedent was engaged in intrastate commerce. *Carberry* v. *Delaware, Lackawanna and Western Railroad Co.*, 93 *N. J. L.* 414; *Lincks* v. *Erie Railroad Co.*, 91 *Id.* 166. The peti-

tioner, however, not only failed to sustain this burden, but the evidence affirmatively showed that at the time of the accident the decedent was engaged in interstate commerce.

It appeared that the piers upon which the decedent was employed were used exclusively for the handling of interstate freight, and that although the decedent had no part in the actual handling of any of this freight, yet, his duties included the watching of the docks themselves and railroad property of a stationery character contained on such piers and used for protective purposes, such as fire hose, pails, tools, sandboxes, &c. Thus, the affirmative evidence was that the work of the decedent was in connection with property devoted exclusively to interstate commerce.

In the leading case of *Pederson* v. *Delaware, Lackawanna and Western Railroad Co.,* 229 *U. S.* 146, the plaintiff was carrying bolts to be used in repairing a bridge belonging to the defendant and regularly used in both interstate and intrastate commerce, and while carrying such bolts was struck by an intrastate passenger train. The Supreme Court of the United States, holding that the plaintiff at the time of the accident was engaged in interstate commerce, said, *inter alia:*

"True, a track or bridge may be used in both interstate and intrastate commerce, but when it is so used it is none the less an instrumentality of the former; nor does its double use prevent the employment of those who are engaged in its repair *or in keeping it in suitable condition for use* from being an employment in interstate commerce."

In the case of *Philadelphia and Reading Railway Co.* v. *DiDonato,* 256 *U. S.* 327, the United States Supreme Court held that a watchman employed on an interstate railroad at a public grade crossing to signal both interstate and intrastate trains and guard the tracks against disorder and obstruction, was employed in interstate commerce, irrespective of the interstate or intrastate character of the particular train he might be flagging when injured. The court said, in part:

"DiDonato's duty had other purpose than the prevention of a disaster to a particular train. It had purpose as well

to the condition of the tracks and their *preservation from disorder and obstructions."*

See, also, *Flynn* v. *New York, Susquehanna and Western Railroad Co., 90 N. J. L.* 450; *Southern Pacific Co.* v. *Industrial Accident Commission of the State of California,* 174 *Cal.* 8, 16.

In *Culp* v. *Atlantic City Railroad, 93 N. J. L.* 244, petitioner was injured while painting a baggage-room used by the defendant railroad company at its Cape May terminal for the storage of both interstate and intrastate baggage. The Court of Errors and Appeals held that the plaintiff was engaged in interstate commerce and consequently had no standing under the State Workmen's Compensation act. The court said, in part:

"Whether or not the petitioner was engaged in interstate commerce depends upon whether the baggage-room was an instrumentality used by the carrier in the handling of its interstate business."

In *Vincelli* v. *The Central Railroad Company of New Jersey, 98 N. J. L.* 726, the Court of Errors and Appeals held that a sectionman who was injured while working upon the tracks and roadbed of the railroad which at such time was used in both interstate and intrastate commerce, was engaged in interstate commerce and was not entitled to invoke the protection of the New Jersey Workmen's Compensation act.

Thus, it appears that where an employe's work is in connection with an instrument of the carrier used in *both* interstate and intrastate traffic or commerce, the employe in all of such cases is held to be employed in interstate commerce, and his remedy, if any, is exclusively under the. Federal Employers' Liability act.

In the case at bar, however, it is undisputed that the decedent's duties were *solely* in connection with property and instrumentalities of the defendant used *exclusively* in *interstate* commerce. This leads to the inevitable result that the State act has no application and the workmen's compensation bureau is without jurisdiction.

The case of *Bissett* v. *Lehigh Valley Railroad Co.,* 4 *N. J. Adv. R.* 519; *affirmed,* 4 *Id.* 1855, is not in point. In that

case the employe was repairing an engine which had been withdrawn from service, and the decision that the employe was engaged in intrastate commerce was specifically based upon the fact as found by the Essex County Court of Common Pleas that at the time of the accident such engine was "not engaged in any commerce" but was withdrawn therefrom for repairs. This was in line with the well-settled rule as annunciated in *Herzog* v. *Hines*, 95 *N. J. L.* 98; *Price* v. *The Central Railroad Co. of New Jersey*, 99 *Id.* 425; *Jayson* v. *Pennsylvania Railroad Co.*, 3 *N. J. Adv. R.* 199.

The distinction between such line of cases and the instant case is obvious, for in the instant case none of the instrumentalities of transportation or property of the respondent which the decedent was watching, guarding or protecting, was withdrawn from service, but all were in service, and, in addition, exclusively used in such service in interstate commerce.

The petition should therefore be dismissed.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

CHARLES E. CORBIN,
*Deputy Commissioner.*