### FRANCIS v. LOUISIANA & A. RY. CO.
#### No. 1644.

Court of Appeal of Louisiana. First Circuit.
Dec. 10, 1936.

148

R. C. Taylor and Albritton & Hardin, all of Baton Rouge, for appellant.

Milling, Godchaux, Saal & Milling, of New Orleans, for appellee.

OTT, Judge.

Plaintiff's husband was run over and killed by a motorcycle owned by the city of Baton Rouge and operated by a police officer of that city in the early morning of May 26, 1933, at a point where North boulevard crosses the tracks of the defendant railroad company. At the time of his injury and death the deceased husband was in the employ of the defendant railroad company as a flagman at said crossing, and, in pursuance of his duties, had come out into the boulevard for the purpose of flagging traffic on said boulevard to permit the safe passage of a switch engine of the railroad traveling on the main line over the street crossing.

The suit is to recover compensation under the state law for the death at the rate of $3 per week for a period of 300 weeks, and for an additional sum of $144 for burial expenses, a total of $1,044. The employment, manner of death, and wages received by the deceased are admitted, but the defendant contends that, at the time of his death, the deceased was employed in interstate commerce, and, therefore, whatever claim plaintiff may have is controlled by the Federal Employers' Liability Act (45 U.S.C.A. § 51 et seq.) and not by the State Workmen's Compensation Law (Act No. 20 of 1914, as amended). The trial court sustained this defense and dismissed plaintiff's suit, from which she has taken this appeal.

The evidence shows that the duties of the deceased were to signal vehicular and pedestrian traffic on the approach of a train at the crossing in order to protect and warn traffic and to give the train free and safe passage over the public street. It appears that the deceased was furnished with a signaling device consisting of a large round piece of tin, painted red, fastened to a handle, on which was printed on both sides the word "Stop." On the approach of a train to the crossing, it was the duty of the flagman to go out into the street and hold up this signal to stop traffic on the street in order that the train might pass over the crossing without stopping and to protect those traveling on the street from being injured. After the train had passed, the flagman would pull down his signal and retire from the street. At night a lantern with a red light was used for signaling instead of the signal device described above.

The flagman never signaled the train to stop for the crossing except in cases where a funeral, ambulance, or fire engine was passing, or in case of some emergency requiring the train to stop in order to give traffic the right of way over the crossing. So far as the evidence shows, the deceased had never had occasion to signal a train to stop at the crossing, and on the night of his injury and death, he was not attempting to flag the switch engine approaching the crossing, but was

endeavoring to signal traffic on the street to stop for the passage of the switch engine.

Plaintiff has stressed the fact and has attempted to make it appear that the principal, if not the sole, duty of the watchman was to protect the traveling public from injury at the crossing, and that his duties had no particular reference to the signaling and operation of trains on the railroad; that his duties pertained to the protection of the public on the street, not in furtherance of transportation on the railroad. We think it is manifest that the duties of the flagman covered both of these purposes. The flagman was placed at the crossing by the railroad and paid by it. We think it would be assigning to the railroad too much of an altruistic purpose, and one it would no doubt disclaim, to say that the railroad paid a flagman at the crossing more because of its interest in protecting the traveling public than because of its interest in facilitating and expediting the passage of its trains over the crossing  The railroad had a vital interest in seeing that its trains were not required to stop at the crossing, and in having its tracks kept open for the free movement of trains, locomotives, and in carrying on its switching operations.

The defendant railroad is engaged in both interstate and intrastate commerce. Interstate and intrastate trains, freight and passenger, passed over the crossing, and switch engines used the main line and switch track over the crossing in switching operations and in making up trains with cars destined to interstate and intrastate points. The switch engine No. 173 had just been backed out of the engine track and was headed south, toward the crossing on the main line, for the purpose of going into track No. 1, which track switches out from the main line just south of the crossing, there to pull out some cars and line them up for the freight trains coming through later that night. Some of the cars to be placed for these freight trains were cars destined for points out of the state and some were destined for points within the state. As this switch engine approached the crossing going south for the purpose stated above, the deceased came out on the street to flag the traffic in order to give the engine free passage, and it was while discharging this duty that he was struck by the motorcycle on the street and killed.

■ Was the deceased, at the time of his injury and death, engaged in interstate transportation, or in work so closely related to such transportation as to be practically a part of it? If he was, then the widow cannot recover compensation under the state law, but she is relegated to the Federal Employers' Liability Act (45 U. S.C.A. § 51 et seq.). Act No. 20 of 1914, § 30, as amended by Act No. 244 of 1920.

The question of whether or not the employee of an interstate carrier, injured or killed, was so injured or killed while engaged in interstate commerce so as to exclude the application of state workmen's compensation laws, has given rise to a multitude of cases, many of which are hopelessly conflicting. Without any effort to discuss or reconcile the many cases which have been cited by able counsel on both sides, we will confine our discussion to only a few of the cases which we consider most relevant to the facts in the present case. One of these cases, decided by the highest court of the land in 1921, we consider persuasive, if not fully decisive, of the present case. We refer to the case of Philadelphia & Reading Railway Company v. Di Donato, 256 U.S. 327, 41 S.Ct. 516, 65 L.Ed. 955. In that case Di Donato was employed by the railroad at a street crossing to flag both intrastate and interstate trains passing over the crossing. In the course of his employment he was killed by a train whose character was not disclosed. The syllabus of that case reflects the ruling of the U. S. Supreme Court on the point involved in the case: "A person employed as a railway flagman at a public crossing, to signal both intrastate and interstate trains, was, without regard to the character—intrastate or interstate—of the particular train which he was flagging when killed, engaged in interstate commerce, within the meaning of the Federal Employers' Liability Act, so as to exclude the operation of a state workmen's compensation law."

■ As the plaintiff's deceased husband was employed to signal traffic to facilitate the passage of both intrastate and interstate trains over this crossing, it would seem, under the above decision, that his employment was interstate in character, regardless of the intrastate or interstate character of the particular movement of the switch engine about to cross the street when the deceased was killed. However, learned counsel for

plaintiff have attempted to distinguish this case from the Di Donato Case on the ground that in the present case the duties of the deceased flagman required him to signal traffic on the street and to protect the traveling public, while in the Di Donato Case, the duties of the flagman were to signal the trains and protect the tracks from obstructions and disorder. The distinction, if any, cannot change the principle involved. As already stated, the deceased flagman had a double duty to perform, one to protect the traveling public on the street, the other to facilitate and expedite transportation over the crossing. While he was protecting the public, he was also acting in furtherance of transportation in making it possible for trains to cross the street without being delayed; in making it unnecessary for a member of the crew to get off the train to protect the crossing; and in seeing that no obstructions occasioned from the street traffic were permitted to remain on the track. The same contention as is made here on this point was made and overruled in the case of Southern Pacific Co. v. Industrial Accident Comm., 174 Cal. 8, 161 P. 1139, L.R.A.1917E, 262. The court there held that a watchman at a highway crossing employed by a railroad company engaged in intrastate and interstate transportation was employed in interstate commerce within the meaning of the federal act, although his injury was caused by an intrastate train. However, the decisions of the state courts on this point are not all uniform. For instance, in the case of Louisville & N. R. Co. v. Barrett, 143 Ga. 742, 85 S.E. 923, it was held that a watchman at a gate cannot be held to be engaged in interstate commerce, where his duties were primarily for the safety of the public, and did not appear to have extended to any control over the movements of the train on account of the approach of which the watchman was warning pedestrians not to come upon the track, was engaged in carrying interstate freight, although its destination was in another state, or that the passenger train which struck him was engaged in interstate commerce. Likewise, it was held in the case of Brown v. Yazoo & M. V. R. Co. (La.App.) 159 So. 154, the employee injured while repairing a crossing over the railroad track for the safety of the public, was held not to be engaged in interstate commerce, even though the railroad was engaged in both intrastate and interstate commerce.

But we must be guided in cases of this kind by what we understand to be the meaning of the decisions of the highest court. It is further contended that the Di Donato Case has been greatly modified by other and later decisions of the United States Supreme Court. We grant that there seems to be a tendency in the later decisions of the United States Supreme Court to make the state compensation laws applicable wherever there is doubt as to the character of the employee's work, i. e., whether or not he was engaged in interstate commerce so as to bring his case within the federal law. In most cases the compensation laws are much more favorable to the injured employee as he is relieved of the necessity of proving negligence which he must prove under the federal law. However, we do not find that the Di Donato Case has ever been overruled by the United States Supreme Court.

Conceding that subsequent decisions of the United States Supreme Court have somewhat modified the ruling in the Di Donato Case to the effect that a flagman guarding a crossing over which both intrastate and interstate trains pass, is engaged in interstate commerce within the Federal Employers Liability Act, irrespective of the particular traffic movement of the train causing the injury, or the train for which the flagman signals approaching traffic on the street, yet, we find from the evidence in this case, that the switch engine on account of which the deceased went out into the street to stop approaching traffic so that the engine could pass, was itself engaged in a movement in furtherance of interstate transportation. This engine was going into this switch track for the purpose of making up a string of cars to be picked up by the through freight trains, shortly to arrive. Some of these cars were destined for interstate service. The mission of this particular switch engine when crossing the street was in furtherance of duties relating to interstate commerce, and when the deceased was facilitating that engine in making the crossing without delay or obstruction on the street, he was assisting and promoting the mission of that engine in much the same manner as were the men who were operating it.

For the reasons assigned, the judgment is affirmed at the cost of appellant.