# PHILADELPHIA & READING RAILWAY COMPANY *v.* DI DONATO.

## CERTIORARI TO THE SUPREME COURT OF THE STATE OF PENNSYLVANIA.

No. 297.   Argued April 28, 1921.—Decided May 16, 1921.

A watchman employed on an interstate railroad at a public grade crossing to signal both interstate and intrastate trains and guard the tracks against disorder and obstruction, is employed in interstate commerce, irrespective of the interstate or intrastate character of the particular train he may be flagging when injured.    P. 329. *Pedersen* v. *Delaware, Lackawanna & Western R. R. Co.,* 229 U. S. 146.

266 Pa. St. 412, reversed.

THE case is stated in the opinion.

*Mr. George Gowen Parry* for petitioner.

*Mr. Francis H. Bohlen* for respondent.

MR. JUSTICE McKENNA delivered the opinion of the court.

Certiorari directed to the review of a judgment of the Supreme Court of Pennsylvania, affirming a judgment

of the Court of Common. Pleas of the County of Phila-
delphia, which affirmed · an award of the Workmen's
Compensation Board of the State of Pennsylvania,
allowed respondent, as widow of Pasquale Di Donato who,
in the course of his employment by the Railway Com-
pany, was killed. Her petition was presented in the legal
course to the Board, and assigned for an investigation
to a referee who reported an award in accordance with it.

The Company prosecuted an appeal to the Board which
affirmed the award and dismissed the appeal. The judg-
ment was successively affirmed, as we have said, by
the Court of Common Pleas and by the Supreme Court.

There is no connected finding of facts aside from con-
clusions of law. The referee found that Di Donato was
employed by the Company "as a crossing watchman "
at a particular public crossing, and that on March 18, 1918,
at about 7:15 P. M. "while acting in the course of his
employment ⋮ . . while flagging a train . . .
was struck by a train of the defendant company and
instantly killed." The findings then recite that the
Company contended that at the time of the occurrence
of the injury Di Donato "was engaged in interstate
commerce," but it is added that the Company "failed to
prove by the weight of the evidence that such was the
fact." And further, that the Company "showed that
many interstate shipments and trains passed over the
rails of the defendant company . . . but they [it]
did not offer any evidence whatever to show that at the
time of the occurrence of the injury Pasquale Di Donato
was engaged in performing some duty incident to the
passage of an interstate train; and since the burden is on
the defendant to show by the weight of the evidence that
the injured employee was at the time of the occurrence
of the injury engaged in interstate commerce, we find,
as a fact," that at such time Di Donato "was not engaged
in work incident to interstate commerce." It was further

found that the Company was "engaged in both intrastate and interstate commerce."

The finding by the Board was that Di Donato "was killed in the course of his employment for the defendant " while he "was employed as a watchman upon a public crossing" where a public street "crosses the tracks" of the Company. And that "an agreement was placed upon record that the defendant is engaged in both intrastate and interstate traffic." The deduction of the Board was the same as that of the referee, that the defense of interstate commerce when set up by the defendant became a matter of proof by competent and reliable testimony, and that the burden of proof of the same was thrown upon the defendant, and "that the character of the employee's undertaking in this respect must be determined by the work he had actually been engaged in at the very time of the accident."

The facts and the conclusions thus expressed by the referee and the Board were, in effect, repeated by the Supreme Court and made the grounds of decision.

The facts as found we may assume to exist, facts, however, disassociated from legal deductions from them. These facts are only that Di Donato was employed by the Company as a flagman at a public crossing to signal both intrastate and interstate trains. In other words, his employment concerned both kinds of trains without distinction between them or character of service. He was an instrument of safety for the conduct of both. And in the course of his employment he was killed by a train whose character is not disclosed. These are the facts, all else the assertion of legal propositions. We are brought, therefore, to a consideration of the soundness and determining quality of the legal propositions.

In *Pedersen* v. *Delaware, Lackawanna & Western R. R. Co.*, 229 U. S. 146, this court had occasion to consider the instrumentalities of commerce and to determine whether they should have intrastate or interstate character. The

case was concerned with mechanism—tracks and bridges, but there was a human element as well, one who was engaged in keeping the mechanisms in repair, and, it was decided, that, as they were instruments of interstate as well as of intrastate commerce, he was engaged in interstate commerce. It was said, "true, a track or bridge may be used in both interstate and intrastate commerce, but when it is so used it is none the less an instrumentality of the former; nor does its double use prevent the employment of those who are engaged in its repair or in keeping it in suitable condition for use from being an employment in interstate commerce."

Being the same in principle if not in instances, the following cases are urged to be of pertinent illustration, *Southern Pacific Co.* v. *Industrial Accident Commission,* 174 California, 8; *Graber* v. *Duluth, South Shore & Atlantic Ry. Co.,* 159 Wisconsin, 414; *Chicago & Alton R. R. Co.* v. *Industrial Commission,* 288 Illinois, 603; *Flynn* v. *New York, Susquehanna & Western R. R. Co.,* 90 N. J. L. 451. Also *Southern Ry. Co.* v. *Puckett,* 244 U. S. 571, and cases cited.

Respondent resists the application of the *Pedersen Case* and contends that the other cases do not militate against the judgment in the pending case. They, and the *Pedersen Case,* it is said, represent different classes: the *Pedersen Case* "those in which it is impossible to assign the service to any particular traffic movement, since the work is done on some instrumentality which is used indiscriminately in the general traffic of the road"; the other cases, "those in which the service is given to expedite or secure the safety of some particular traffic movement." To the latter class counsel for respondent assign the present case, and the Supreme Court accepted that view. Counsel, however, feel an impediment to their view in the fact that this court has given the *Pedersen Case* as authority for cases which counsel assign to the other class, that is, whose instance was the safety of some particular movement. But grant-

ing there is a basis for the classification that counsel make; we think the present case falls within the *Pedersen Case.* The service of a flagman concerns the safety of both commerces and to separate his duties by moments of time or particular incidents of its exertion would be to destroy its unity and commit it to confusing controversies.

And besides, as observed by the Supreme Court of the State of California in *Southern Pacific Co.* v. *Industrial Accident Commission, supra,* Di Donato's duty had other purpose than the prevention of a disaster to a particular train. It had purpose as well to the condition of the tracks and their preservation from disorder and obstructions. This service and the other service cannot be separated in duty and responsibility. It is to be remembered that not only the remedy of one employee is involved in a particular duty but that other employees and other remedies are to be considered as well, and the defenses to them, and that behind them are the respective powers that may have ordained them. Therefore, whether they be of state or congressional power, there is an equal necessity for their accurate delimitation. This case, therefore, has importance beyond the interest of the parties to it. Its principle and example, reinforcing the *Pedersen Case* and the cases based upon it, make a test by which future cases may be assigned to intrastate or interstate commerce and mark the power and policies that may be necessary or convenient to either.

As we deduce from the duty of Di Donato his employment to have been in interstate commerce, we have no occasion to consider what presumptions might be indulged if his employment were not thereby established, whether for or against intrastate commerce.

*Judgment reversed and cause remanded for further proceedings not inconsistent with this opinion.*

MR. JUSTICE CLARKE dissents.