**BORDELON v. N. O. TERMINAL CO.**

———

(January 13, 1930.   Opinion and Decree.)

———

Samuel Moreau, of Marksville, and Frymire & Ramos, of New Orleans, attorneys for plaintiff, appellant.

Monroe & Lemann and Walter J. Suthon, Jr., of New Orleans, attorneys for defendant, appellee.

WESTERFIELD, J. The widow and minor children, dependents of William J. Young, deceased, bring this suit for compensation under Act 20 of 1914, as amended. The defendant answered denying liability on the ground that Young, at the time of his death, was employed by it in interstate commerce, and consequently plaintiffs' claim, if any they have, is controlled by the Federal Employers' Liability Act (45 USCA secs. 51-59). This defense prevailed below and plaintiffs have appealed.

The defendant corporation owns and operates a terminal station in the city of New Orleans, and, in conjunction therewith, maintains various tracks, yards, and other terminal facilities, which are used by several railroads engaged in both interstate and intrastate commerce. For the most part, defendant's tracks are used by trains carrying passengers and freight in interstate traffic. Young was employed as a night watchman to guard the property of defendant. His duties were not unlike those of any other watchman, to police defendant's premises, guard the box cars and tracks and other property of defendant. On the night of January 16, 1927, at about 6 o'clock p. m., Young was discovered by the crew of a train entering the city over defendant's tracks, in a dying condition. When found he was lying a few feet from the track, suffering from the effects of a gunshot wound, from which he died shortly after having been discovered. The character of Young's employment at the moment of his injury, how he was shot, by whom, and when, is unknown.

It must be conceded that the defendant corporation was engaged in interstate commerce. Hamilton vs. L. R. & N. Co., 162 La. 841, 111 So. 184; Southern Pac. Terminal Co. vs. Interstate Commerce Commission, 219 U. S. 498, 31 S. Ct. 279, 55 L. Ed. 310; U. S. vs. Union Stock Yard & Transit Co. of Chicago, 226 U. S. 286, 33 S. Ct. 83, 57 L. Ed. 226. The tracks which the deceased, Young, was required to guard as a part of his duties, were instrumentalities of interstate commerce, though partly used in intrastate commerce. Pedersen vs. D. L. & W. Ry. Co., 229 U. S. 146, 33 S. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153. If Young, at the time of his death, was engaged in guarding or policing the tracks of the defendant railroad, he was, when fatally wounded, engaged in the discharge of a duty so inseparably connected with interstate commerce as to form part of it. Shanks vs. D. L. & W. R. Co., 239 U. S. 556, 36 S. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797. The foregoing proposition of law cannot under the jurisprudence be the subject of reasonable controversy, as counsel for

plaintiffs freely and frankly concede. It is contended, however, that since there is no proof in the record to indicate how Young met his death or what he was doing at the time, and since the character of his occupation was such as to partake of the nature of interstate and intrastate commerce and at times involving neither the one nor the other, and since the Federal Employers' Liability Act applies only to "an employee suffering injury while he is employed by such carrier in such commerce," there is nothing to show that Young was, at the time of his death, so employed. The burden of proving such employment, it is claimed, rests upon defendant. It is to be noted that a large percentage of the activities of the defendant railroad (95 per cent according to the evidence) were devoted to interstate commerce. It is fair to assume that the duties of the plaintiff Young were principally confined to guarding the tracks and other instrumentalities of the defendant company employed by it in such commerce. Erie R. Co. vs. Winfield, 244 U. S. 170, 37 S. Ct. 556, 61 L. Ed. 1057, Ann. Cas. 1918B, 662; Phila. & Reading Ry. Co. vs. Polk, 256 U. S. 332, 41 S. Ct. 518, 519, 65 L. Ed. 958. In the last-cited case we find the following:

"It would seem indisputable, therefore, if there be an assertion of the claim or remedy growing out of an occurrence in which there are constituents of interstate commerce the burden of explanation and avoidance is on him who asserts the claim or remedy, not on the railway company to which it is directed, and there is nothing in Osborne v. Gray, 241 U. S. 16, 36 S. Ct. 486, 60 L. Ed. 865, in opposition."

The Louisiana Compensation Act, sec. 30, as amended by Act No. 244 of 1920, under which plaintiffs bring this suit, provides that the act shall not apply to an employer acting as a common carrier, while engaged in interstate and foreign commerce by railroad, but "if the injury or killing of an employee of a railroad occurs while the employer and employee are both engaged and employed at the time in an intrastate operation or movement and said movement or operation is not controlled or governed by the laws, rule of liability, or method of compensation which has been or may be, established by the Congress of the United States, then this Act shall govern."

Under the circumstances it seems to us that the burden of proving plaintiffs' case to be without the rule and within the exception mentioned in the state act rested upon the plaintiffs, and that, since there is neither allegation in the petition nor proof in the record to show that, at the time of Young's injury, he was not engaged in a duty inseparably connected with the prosecution of defendant's interstate business with which it was mainly engaged, then plaintiffs' suit must fail.

The view we have taken of the case renders it unnecessary for us to consider the many appropriate decisions of the federal courts pressed upon our attention, which exhibit such refined distinctions as, upon occasion, to perplex the understanding when an effort is made to extract therefrom a rule, formula, or principle for our guidance in solving the intricate question of when the state and when the national authority begins and ends, as affecting the right of an injured employee to recover under circumstances similar to those presented in this case.

For the reasons assigned, the judgment appealed from is affirmed.

JANVIER, J. (concurring.) This case presents two questions. First and most important is the question of the burden of proof: Is it the duty of plaintiff to prove that, at the time of decedent's death, he

was engaged in intrastate commerce and that thus the state compensation act is applicable; or, is it the duty of defendant to show that decedent was not engaged in intrastate commerce, was engaged in interstate commerce, and that thus the state compensation law cannot apply?

The second question presented is one of fact; that is if it be conceded that defendant must bear the burden of affirmatively proving that the decedent was engaged in interstate commerce has it met its obligations in that regard and has it proven by a preponderance of the evidence that he was so engaged?

I shall first consider the question of the burden of proof.

In general in the absence of any showing as to what are the duties of a particular employee it may be assumed that his duties are intrastate in character and that the state compensation laws apply. This results from the fact that normally all employees are theoretically engaged in intrastate commerce and that, even when working for interstate carriers, it is assumed that their normal classification as intrastate employees remains, unless the contrary be shown. In Erie R. Co. vs. Welsh, 242 U. S. 303, 37 S. Ct. 116, 118, 61 L. Ed. 319, the Supreme Court of the United States considered the question of whether or not an employee was engaged in interstate commerce. The particular employee had just completed the performance of certain interstate work and was on his way to the office to receive further orders. Had he reached the office, the orders he would have received would have sent him out on another interstate job. It was argued that he was thus engaged in interstate commerce. The court, however, said:

"Upon the strength of this it is argued that his act at the moment of his injury partook of the nature of the work that, but for the accidental interruption, he would have been called upon to perform. In our opinion, this view is untenable. By the terms of the Employers' Liability Act the true test is the nature of the work being done at the time of the injury, and the mere expectation that plaintiff would presently be called upon to perform a task in interstate commerce is not sufficient to bring the case within the act. Illinois Cent. R. Co. v. Behrens, 233 U. S. 473, 478, 34 S. Ct. 646, 58 L. Ed. 1051, 1055, Ann. Cas. 1914C, 163."

It thus appears that, even though an employee may be engaged in interstate commerce, there always hovers over him, waiting to attach itself to him, as soon as the opportunity offers, his normal character as an intrastate employee. This normal intrastate character attaches itself to him the moment the interstate occupation is definitely and completely terminated, but not until then, and remains until he again commences upon work necessary or incidental to interstate commerce. But the question which we are considering here is the classification of the laborer who is engaged, at the same time, in the performance of two different kinds of work—one interstate and one intrastate—and where it cannot be definitely said that, at the precise moment of sustaining the injury, he was engaged in one to the exclusion of the other. If, at the time of the injury, he is actually engaged at his work and that work includes both intrastate and interstate commerce, the inevitable conclusion results that he is an interstate employee engaged at that moment in interstate commerce, and the burden of proving the contrary rests upon that person who depends for recovery upon the application of the state laws, and who, therefore, in order to recover, must prove that the federal law has no application.

The Supreme Court of the United States, in two cases which I consider directly

in point, has held that, under such circumstances, the plaintiff who seeks to recover under the state statute bears the burden of producing proof to show that the federal statutes do not apply. In Philadelphia & Reading Ry. Co. vs. Polk, 256 U. S. 332, 41 S. Ct. 518, 519, 65 L. Ed. 958, the decedent was killed as a result of being caught between two cars of a train. Some of the cars were interstate and some intrastate. The Supreme Court of the State of Pennsylvania affirmed an award made by the Workmen's Compensation Board of the state and in doing so held the employee may have been engaged in performing services with reference to one of the intrastate cars, and that the burden of showing the contrary was upon the railroad company. The Supreme Court of the United States, in reversing the decision of the Supreme Court of Pennsylvania, said:

"The referee did not find definitely as a fact that Polk was engaged in intrastate commerce at the time of his injury, but assumed that the fact might be so; therefore, regarded it as so, because in his * * * opinion the burden of proving the contrary; that is, that Polk 'was actually engaged in work incident to interstate commerce,' was upon the company and the company had 'not met the burden required of it' and further, that the company 'offered no testimony whatever to show what work John M. Polk was performing at the time he was injured. * * *'

"Besides, we cannot accede to the view that there is a presumption that duties performed on a train constituted of interstate and intrastate commerce were performed in the latter commerce. The presumption, indeed, might be the other way. It is to be remembered that it is the declaration of the cases that if there is an element of interstate commerce in a traffic or employment it determines the remedy of the employee. Second Employers' Liability Cases, 223 U. S. 1, 32 S. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; New York Central R. R. Co. vs. Winfield, 244 U. S. 147, 37 S. Ct. 546, 61 L. Ed. 1045, L. R. A. 1918C, 439, Ann. Cas. 1917D, 1139."

In another case, Philadelphia & Reading R. Co. vs. Di Donato, 256 U. S. 327, 41 S. Ct. 516, 65 L. Ed. 955, the Supreme Court of the United States also reversed a judgment of the Supreme Court of Pennsylvania. Di Donato was killed while employed as watchman at a crossing over which both interstate and intrastate commerce passed. In reversing the State Compensation Board and the State Supreme Court, the Supreme Court of the United States held that the employee at the time was engaged in the furtherance of both intrastate and interstate commerce and that the burden of proving that his work at the instant of the accident was limited to intrastate commerce was upon plaintiff.

Another very interesting case, which appears to me to be directly in point, is Frank O. Bauchspies vs. Central R. Co. of New Jersey, 287 Pa. 590, 135 A. 728, 729. The facts, as stated by the Supreme Court of Pennsylvania, were:

"Frank O. Bauchspies was employed by defendant railroad company as a maintenance man at one of its interlocking electric plants, located near a point where defendant's tracks crossed at grade those of the Lehigh Valley Railroad Company. It was Bauchspies' duty to take care of the switches and signals at this crossing, and of the batteries and other motive power equipment which operated them. While in the course of his employment, Bauchspies fell into the Lehigh river, close to the interlocking plant, and was drowned. * * * Interstate, as well as intrastate, trains were operated over this crossing regularly by both railroads."

In deciding that the burden of proof was on the plaintiff to show that at the time of the accident the deceased was not engaged in interstate commerce, the court said:

"The work required by deceased's duties was so closely related to interstate com-

merce as to be a part of it. Glunt v. Penna. R. R. Co., 249 Pa. 522, 524, 95 A. 109; Phila. & Reading Ry. Co. vs. Di Donato, 256 U. S. 327, 329, 330, 41 S. Ct. 516, 65 L. Ed. 955. The fact that the facility which deceased helped to maintain was used to further both kinds of commerce would not make it presumptively an instrument of intrastate, as against interstate, transportation; on the contrary, the presumption is rather the other way. Pedersen v. D. L. & W. R. Co., 229 U. S. 146, 152, 33 S. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153. 'If there is an element of interstate commerce in a traffic or employment, it determines the remedy of the employee.' P. & R. Ry. Co. v. Polk, 256 U. S. 332, 334, 41 S. Ct. 518, 519, 65 L. Ed. 958.

"True, there was no evidence as to just what Bauchspies was doing when he came to his death; but it was shown that his regular employment was of such a nature that, under Phila. & Reading Ry. Co. v. Di Donato, supra, 330, 331 (41 S. Ct. 516), it could not be split into separate acts of interstate and intrastate commerce. This cast on plaintiff the burden of taking the case out of the purview of the federal Employers' Liability Act (U. S. Comp. St. secs. 8657-8665 (45 USCA secs. 51-59)), and of bringing it within the state Workmen's Compensation Act by proof that the death did not occur in the course of employment in interstate commerce."

On application to the Supreme Court of the United States, that court refused to issue a writ of certiorari. 273 U. S. 763, 47 S. Ct. 476, 71 L. Ed. 880.

But, even if it be admitted that the burden of proof is placed upon the railroad to show facts which make the federal statutes applicable, it appears to me that the railroad has borne that burden and has, by a preponderance of the evidence, shown such facts.

Here the facts were that Young, the decedent, was engaged as a watchman. His duties, as stated in the findings of the trial court, which findings of fact are conceded to be correct, were: "To guard the tracks against obstructions or thrown switches, to guard all freight cars on its tracks against spoliation and to keep hoboes, tramps and robbers off the passenger trains and freight trains coming into and going out of the terminal's tracks, yards and stations."

It must be assumed that, at the time Young met his death, he was engaged in the performance of his duties, because, if he were not so engaged, plaintiff would have no case, even under the state compensation act, for, even under that act no recovery is allowed in the case of one who has turned aside from his duties. Pierre vs. Barringer, 149 La. 71, 88 So. 691. We may then assume that he was performing his duties, which duties were threefold: First, to guard the tracks against obstructions and thrown switches; second, to guard freight cars against spoliation; and third, to keep hoboes and tramps off trains. The evidence shows that the trains, off which his duties required that he keep hoboes and tramps, were interstate and that the freight cars which he was to guard against spoliation contained both interstate and intrastate commerce. The tracks and switches which he was to guard were used by trains 90 per cent of which actually operated to and from points without the state and practically every one of which contained interstate shipments or passengers Therefore his duties partook of both natures, and thus, under the authorities we have cited, the assumption follows that he was engaged in interstate commerce, unless the contrary be affirmatively shown.

I cannot believe that he was performing services within classification 2 as set forth above, because the evidence shows that there were no freight cars which he was to guard within several hundred feet of the

place at which he was found; in other words, that he was several hundred feet beyond any freight cars. Therefore he could not have been proceeding from his shanty to the freight cars, since his shanty was on one side of them and he was found dead far on the other side. I think that this eliminates the possibility that he could be said to have been guarding freight cars at the time of the death, but even if he was at the time guarding freight cars, the large majority of those in the yard were engaged in interstate commerce. So far as the duties under classification 3 are concerned, it seems to me that the possibility that he was performing these duties is also eliminated, because no train had passed in or out over those tracks for several hours, and none was expected in or out for several hours more. But here again, even if he were performing services under classification 2, the trains he was guarding were almost exclusively interstate in character. The elimination of the possibility of his having been engaged in the performance of duties under classification 3 and under classification 2 brings us to the inevitable conclusion that, if he was engaged in his duties at all, he was engaged in performing those under classification 1; that is, he was guarding the tracks against obstructions and guarding the switches against tampering. If he was so engaged he was performing interstate services. A railroad track and a railroad switch are fixed instrumentalities used in both classes of commerce. Persons engaged in working on such fixed instrumentalities are, while so engaged, working in the furtherance of interstate commerce. Their classification does not change momentarily from one to the other, as does the classification of the employee engaged in the handling of movable instrumentalities. As was said by the Supreme Court of the United States in Pedersen vs. Delaware, Lacka-

wanna & Western R. Co., 229 U. S. 146, 33 S. Ct. 648, 650, 57 L. Ed. 1125, Ann. Cas. 1914C, 153:

"True, a track or bridge may be used in both interstate and intrastate commerce, but when it is so used it is none the less an instrumentality of the former; nor does its double use prevent the employment of those who are engaged in its repair or in keeping it in suitable condition for use from being an employment in interstate commerce."

An employee engaged in a switching crew may at times be engaged in intrastate commerce and at others in interstate commerce, to be determined by the particular kind of traffic being handled. But the Supreme Court of the United States has definitely and finally decided that an employee, who is engaged in working on a fixed instrumentality, such as a track or switch, or a bridge, which is used intermittently in both classes of commerce, is engaged in interstate commerce. In Southern Pacific Co. vs. Industrial Accident Commission, 174 Cal. 8, 161 P. 1139, 1140, L. R. A. 1917E, 262 (certiorari denied by U. S. Supreme Court in 244 U. S. 653, 37 S. Ct. 652, 61 L. Ed. 1373), the Supreme Court of California, in dealing with the case of a crossing watchman who was killed, said:

"There is, of course, no analogy between the case of one so engaged, and that of a trainman engaged in the operation of an exclusively intrastate train. The duties of the latter are solely with reference to the operation and safety of the particular train on which he is engaged, and he has no duty whatever to perform in regard to keeping any instrumentality of interstate commerce in condition for use. Such is the full scope of his employment, and it has no relation whatever to interstate commerce, close or otherwise. The duties of deceased, as we have seen, had to do directly with the keeping of an instrumentality of interstate commerce in suitable condition for the use of such commerce. And

exactly as in the case of one engaged in repairing such an instrumentality after injury thereto has occurred, who concededly is engaged in interstate commerce, it is immaterial whether or not any interstate traffic was immediately to be had over the same. The deceased was actually engaged at the moment of the accident in protecting that instrumentality from injury. His situation in this regard was, in view of the evidence, the same as it would have been if he had been one of a number of guards stationed along the line of railroad to prevent third persons from removing the rails or unlawfully placing obstructions on the track. Certainly their work would not be held to be unrelated to the safety of the track as a highway of interstate commerce."

In another case, Erie R. R. Co. vs. Collins, 253 U. S. 77, 40 S. Ct. 450, 451, 64 L. Ed. 790, the Supreme Court of the United States said:

"It can hardly be contended that while plaintiff was engaged in the signal tower he was not engaged in interstate commerce, though he may have on occasion signaled the approach or departure of intrastate trains."

In Hamilton vs. L. R. & N. Co., 162 La. 841, 111 So. 184, 185, the Supreme Court of Louisiana, in considering the classification into which should be placed the work of an employee engaged in repairing a side track, said:

"For the fact remains that the federal courts, within whose province the matter peculiarly lies, have uniformly held that repairing and maintaining an instrument of interstate commerce constitutes employment in such commerce, and that those engaged in actually repairing and maintaining such instrument, or even assisting therein, are employed in interstate commerce."

In New York Central R. R. Co. vs. Porter, 249 U. S. 168, 39 S. Ct. 188, 63 L. Ed. 536, the Supreme Court of the United States considered the case of an employee killed while removing snow which had fallen between railroad tracks and the station platform, and in that case said:

"An employee of a railroad company killed by a train while removing snow on its premises from a space between a platform and a track used in interstate as well as intrastate commerce, held employed in interstate commerce; the resulting rights and liabilities were determinable by the Federal Employers' Liability Act and the State Workmen's Compensation Law was inapplicable."

Again, in Industrial Commission vs. Davis, 259 U. S. 182, 42 S. Ct. 489, 491, 66 L. Ed. 888, the Supreme Court of the United States used the following general language:

"And there is a difference in the instrumentalities. In some, the tracks, bridges and roadbed and equipment in actual use, may be said to have definite character and give it to those employed upon them."

The conclusion is inevitable that one who performs services in connection with a fixed instrumentality, used indiscriminately in both classes of commerce, is at all times, while so working, engaged in interstate commerce.

To sum up the situation as I see it, that part of Young's duties which required him to guard tracks and switches consisted exclusively of employment in interstate commerce. Pedersen vs. Delaware, Lackwanna & Western R. R. Co., supra.

That part which required him to keep hoboes and tramps off moving trains consisted of employment in interstate commerce. Philadelphia & Reading Ry. Co. vs. Di Donato, supra.

The third and sole remaining duty which he was called on to perform was the guarding of a freight terminal yard in which

were located cars some of which were engaged in interstate and others of which were engaged in intrastate commerce. In guarding that yard which contained both classes of commerce, he was performing services interstate in character, and thus, in the absence of proof that, at the very instant of death, the work in which he was engaged was limited to intrastate commerce, exclusively, it must be presumed that his occupation was interstate. Bauchspies vs. Central R. Co. of New Jersey, supra; Phila. & Reading Ry. Co. vs. Di Donato, supra; Philadelphia & Reading Ry. Co. vs. Polk, supra.

Plaintiff cites as authority for the contention that a railroad watchman or detective is not necessarily engaged in interstate commerce only one decision of the Supreme Court of the United States. N. Y. Central R. R. Co. vs. White, 243 U. S. 188, 37 S. Ct. 247, 61 L. Ed. 667, L. R. A. 1917D, 1, Ann. Cas. 1917D, 629. But an examination of the facts of that case show that it is easily to be distinguished. The court found the facts to be:

"A night watchman in the employ of a railway company, injured while in the performance of his duty to guard tools and materials intended to be used in the construction of a new railway station and new tracks, was not then engaged in interstate commerce."

In discussing the question, the court said:

"The admitted fact that the new station and tracks were designed for use, when finished, in interstate commerce, does not bring the case within the Federal act. The test is, 'Was the employee at the time of the injury engaged in interstate transportation, or in work so closely related to it as to be practically a part of it?' Shanks v. Delaware, L. & W. R. Co., 239 U. S. 556, 558, 60 L. Ed. 436, 438, L. R. A. 1916C, 797, 36 S. Ct. 188. Decedent's work bore no direct relation to interstate transportation, and had to do solely with construction work, which is clearly distinguishable, as was pointed out in Pedersen v. Delaware, L. & W. R. Co., 229 U. S. 146, 152, 57 L. Ed. 1125, 1128, 33 S. Ct. 648, Ann. Cas. 1914C, 153, 3 N. C. C. A. 779. And see Chicago, B. & Q. R. Co. v. Harrington, 241 U. S. 177, 180, 60 L. Ed. 941, 942, 36 S. Ct. 517, 11 N. C. C. A. 992; Raymond v. Chicago, M. & St. P. R. Co., this day decided (243 U. S. 43, 61 L. Ed. 583, 37 S. Ct. 268)."

In other words, a new construction work does not become an instrumentality of interstate commerce until trains commence operating over it, or until actually put into use in the furtherance of interstate commerce.

"Employees assisting in the original construction of tracks, tunnels, bridges, buildings, telegraph lines, engines or cars which have never been used as instrumentalities of interstate commerce, are not employed in interstate commerce within the meaning of the statute." Roberts, Federal Liabilities of Carriers, vol. 2, p. 1461, sec. 761.

"The distinction between original construction work and the repair or maintenance of instrumentalities of transportation is important under the statute, as an employee engaged in the former must look to the laws of the state while, if employed in the latter, the federal act governs." Roberts, Federal Liabilities of Carriers, supra, sec. 762.

The other cases involving watchmen and cited by plaintiff, none of which were decided by federal courts, are easily distinguishable.

However, in C. R. I. & P. Ry. Co. vs. Industrial Board of Illinois. 273 Ill. 528, 113 N. E. 80, L. R. A. 1916F, 540, we find a decision apparently directly in conflict with the findings of the Supreme Court of the United States in Phila. & Reading Ry. Co. vs. Di Donato and Phila. & Reading Ry. Co. vs. Polk, supra. The court there was dealing with the question of the burden of proof, and held that a watchman, whose du-

ties requried him to guard a yard, in which freight cars containing both kinds of commerce were placed, was not necessarily engaged in interstate commerce, and that the duty of proving that he was so engaged was upon the party alleging it. As I have already shown, the Supreme Court of the United States held directly the contrary in the two cases mentioned.

The contention that defendant is not itself engaged in interstate commerce, because it does not actually operate trains, but merely owns the tracks and facilities used by others, was not strenuously urged and does not appear to be supported by authority. In Southern Pac. Terminal Co. vs. Interstate Commerce Commission, 219 U. S. 498, 31 S. Ct. 279, 286, 55 L. Ed. 310, the Supreme Court said:

"The control and operation of the Southern Pacific Company of the railroads and the terminal company have united them into a system of which all are necessary parts, the terminal company as well as the railroad companies. As said by the Interstate Commerce Commission, 'the terminal company was organized to furnish terminal facilities for the system at the port of Galveston;' and it is further said that 'through shipments on the railroad lines from and to points in different states of the Union pass and repass over the docks of the terminal company. It forms a link in this chain of transportation. It is necessary to complete the avenue through which move shipments over these lines owned by a single corporation.'"

To the same effect we find the following language in the case of United States vs. Brooklyn Eastern District Terminal, 249 U. S. 296, 39 S. Ct. 283, 285, 63 L. Ed. 613, 6 A. L. R. 527:

"The transportation performed by the railroads begins and ends at the Terminal. Its docks and warehouses are public freight stations of the railroads. These with its car floats, even if not under common ownership or management, are used as an integral part of each railroad line, like the stockyards in United States v. Union Stock Yard Co., 226 U. S. 286, 33 S. Ct. 83, 57 L. Ed. 226, and the wharfage facilities in Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U. S. 498, 31 S. Ct. 279, 55 L. Ed. 310. They are clearly unlike private plant facilities. Compare Tap Line cases, 234 U. S. 1, 25, 34 S. Ct. 741, 58 L. Ed. 1185. The services rendered by the Terminal are public in their nature; and of a kind ordinarily performed by a common carrier."

And in a case directly in point here, United States vs. Atlanta Terminal Co. (C. C. A.) 260 F. 779 (certiorari denied by United States Supreme Court, 251 U. S. 559, 40 S. Ct. 219, 64 L. Ed. 414), the United States Circuit Court of Appeals for the Fifth Circuit held the Atlanta Terminal Company to be engaged in interstate commerce, though it merely owned the tracks and terminal facilities and did not itself operate trains.

Nor does the fact, that the line of railway of defendant company is situated entirely within the state of Louisiana, deprive it of its character as an instrumentality of interstate commerce. On this point the Supreme Court of the United States, in Interstate Commerce Commission vs. D. G. H. & M. Ry. Co., 167 U. S. 633, 17 S. Ct. 986, 988, 42 L. Ed. 306, said:

"The Detroit, Grand Haven & Milwaukee Railway Company is a corporation of the state of Michigan, and its road lies wholly within that state. In addition to its local business, it is engaged as a common carrier in interstate commerce, by arrangements made with connecting railroads."

I am therefore well convinced that, at the time of the death of Young, both he and his employers were engaged in interstate commerce, and that hence the state compensation statutes are not applicable.

I therefore concur in the opinion and decree.