## HIGGINBOTHAM v. PUBLIC BELT RAIL-ROAD COMMISSION et al.

### No. 16933.

Court of Appeal of Louisiana. Orleans.

May 2, 1938.

Rosen, Kammer, Wolf & Farrar, of New Orleans, for appellant Public Belt Railroad Commission.

Wm. Boizelle, Asst. City Atty., of New Orleans, for appellant City of New Orleans.

John D. Nix, Jr., and Walter B. Hamlin, both of New Orleans, for appellee.

JANVIER, Judge.

By authority of the Constitution and statutes of Louisiana, the Public Belt Railroad Commission of New Orleans (hereinafter, for convenience, called the "Public Belt") operates a system of railroad at the Port of New Orleans and over it transports merchandise. By the same authority, it operates the large recently constructed bridge spanning the Mississippi river just above the City of New Orleans. This structure, known as the "Huey P. Long Bridge," is also a part of the highway system of the State of Louisiana, and over it, on "wings" constructed for that purpose, passes vehicular and other traffic moving over that highway system.

George Ernest Higginbotham, on September 2, 1937, the day on which he was killed, was employed by the said Public Belt as a "maintenance man" on the said bridge. His duties required him to inspect the piers which supported the bridge to ascertain whether there had been any horizontal movement in any of them. In doing so, he moved from pier to pier along the "cat-walk" under the upper surface of the bridge and lowered, alongside each pier, an instrument or testing device known as a "plumb-bob," composed of an 8-pound weight at the end of a very long wire. In doing so, or in moving the instrument from one pier to another, he permitted it to come into contact with a high-tension electric wire which passed under the bridge. This contact permitted the electric current to be transmitted to his body through the wire, causing him to fall to the ground some 80 or 100 feet below. He died as a result of the injuries sustained.

The piers on which he was then working supported only the railroad portion of the structure, which, extending to the ground on a much more gradual decline than did the "wings" which carried highway traffic, continued a mile or so beyond the point at which the "wings" connected with the ground.

There survived him his widow, Mrs. Hazel Young Higginbotham, and a minor son, George Ernest Higginbotham, Jr. His widow, having qualified as natural tutrix of the minor son, individually as widow and as tutrix brought this suit seeking compensation under the laws of the state. Act No. 20 of 1914, as amended.

The Public Belt and the City of New Orleans, made defendants, filed exceptions of no right of action, no capacity to stand in judgment, and no cause of action. Evidence was taken on the exception of no right of action and on the exception of no capacity to stand in judgment. All the exceptions were overruled and the matter was tried below on the issue presented by the answer of defendants in which they, in effect, admitted the facts of the occurrence and of the employment, but asserted that any recovery to which any one might be entitled should be governed and controlled by the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–59, and not by the state statute.

Judgment was rendered in favor of plaintiff individually and as tutrix of her minor son. The amount thereof was fixed at $20 per week for 300 weeks and it also included $150 as expenses of burial. From this judgment defendants have appealed.

Section 1 of the Federal statute, 45 U.S.C.A. § 51, reads as follows: "Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

We consider, first, the issue raised by the exception of no cause of action. Defendants rely upon the allegations of the petition as showing, in effect, that the Public Belt is a common carrier engaged in interstate commerce and they direct attention to section 30 of the State Workmen's Compensation Law, Act No. 20 of 1914, as amended by Act No. 244 of 1920,

§ 1, which section provides: "That this Act shall not be construed to apply to any employer acting as a common carrier while engaged in interstate or foreign commerce by railroad, provided that the employee of such common carrier was injured or killed while so employed; but if the injury or killing of an employee of a railroad occurs while the employer and employee are both engaged and employed at the time in an intrastate operation or movement and said movement or operation is not controlled or governed by the laws, rule of liability or method of compensation which has been or may be, established by the Congress of the United States, then this Act shall govern and compensation shall be recovered hereunder."

They concede that the said section contains a proviso which permits the application of the act where "the injury or killing * * * occurs while the employer and employee are both engaged and employed at the time in an intrastate operation or movement," but they maintain that since, by this proviso, there is furnished an exception to the general rule first above referred to, any one who, under the state statute, seeks recovery from such common carrier, is under the necessity of alleging and showing facts which bring the matter within the exception, and they maintain that, since plaintiff has not alleged that at the time of his death Higginbotham was engaged exclusively in intrastate commerce, she has not brought herself within the coverage of the state statute.

Defendants also maintain that even without reference to the express provisions of the state statute, which excludes from its protection those who are engaged in interstate commerce by common carrier, and even if that statute did not exclude such employees, they maintain that still no cause of action under that statute would be shown because, since the federal act, where it is applicable, excludes the operation of any state statute touching upon the subject of recovery by or on behalf of employees engaged in interstate commerce wherever, in the employment, are shown the constituents of interstate commerce, the burden is on the plaintiff to allege and to show that the employment was actually intrastate, and they maintain, therefore, that plaintiff, having failed to allege exclusive intrastate employment, has not taken the matter out of the exclusive cognizance of the federal statute and, therefore, has not alleged a cause of action under the state statute under which recovery is sought.

In Bordelon v. New Orleans Terminal Co., 14 La.App. 60, 129 So. 452, 453, we considered the identical question which is presented by the above first stated ground on which the exception is based and there we said: "Under the circumstances it seems to us that the burden of proving plaintiffs' case to be without the rule and within the exception mentioned in the state act rested upon the plaintiffs, and that, since there is neither allegation in the petition nor proof in the record to show that, at the time of Young's injury, he was not engaged in a duty inseparably connected with the prosecution of defendant's interstate business with which it was mainly engaged, then plaintiffs' suit must fail."

In Philadelphia & Reading Ry. Co. v. Polk, 256 U.S. 332, 41 S.Ct. 518, 519, 65 L.Ed. 958, on the question of where lies the burden of proof and, consequently, where lies the burden of making the necessary allegation when there are shown the constituents of interstate commerce, the Supreme Court of the United States said: "It would seem indisputable, therefore, if there be an assertion of the claim or remedy growing out of an occurrence in which there are constituents of interstate commerce the burden of explanation and avoidance is on him who asserts the claim or remedy, not on the railway company to which it is directed, and there is nothing in Osborne v. Gray, 241 U.S. 16, 36 S.Ct. 486, 60 L.Ed. 865, in opposition."

■ But to sustain the exception based solely on the absence of an allegation, which allegation, so far as we can tell, possibly can be made, might merely result in delay, because it is now well settled that in such case the opportunity to amend should be afforded. Reeves v. Globe Indemnity Company, 185 La. 42, 168 So. 488; 9 Tulane Law Review 55. We, therefore, consider the issue presented by the exception of no right of action because, if that exception is well founded, there is no escape from a judgment of absolute dismissal. That exception—that the widow, as such, and as tutrix of the minor, is without right to seek redress for the death of the employee of a common carrier occurring while the employee is engaged in the furtherance of interstate commerce—is founded on the fact that the federal statute,

to which we have referred, is, where applicable, all-inclusive and all-exclusive, and prevents recovery by any one except by "his or her personal representative."

■ That, in all situations in which the federal statute is applicable, it excludes all state statutes and prevents recovery by any one except the personal representative of the deceased, is so well settled that we find it necessary to make only slight reference to the decisions on the subject.

In St. Louis, S. F. & T. Ry. Co. v. Seale, 229 U.S. 156, 33 S.Ct. 651, 57 L. Ed. 1129, the Supreme Court of the United States said: "Where the Federal Employers' Liability Act is applicable, the state statute on the same subject is excluded by reason of the supremacy of the former."

In Penny v. New Orleans G. N. R. R. Co., 135 La. 962, 66 So. 313, 314, the Supreme Court of Louisiana said: "We find it settled by the Supreme Court of the United States that the Employers' Liability Act (being Act Cong.April 22, 1908, c. 149, 35 Stat. 65, 66, as amended by Act April 5, 1910, c. 145, 36 Stat. p. 291 [U.S.Comp.St.1913, §§ 8657–8665, 45 U. S.C.A. §§ 51–59] 'supersedes the laws of the several states, so far as the latter cover the same field,' and that any state laws which impose upon a carrier, by railroad, engaged in interstate commerce, a liability, in damages to 'any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employe to his or her personal representative, for the benefit of the surviving widow or husband and children of such employe, and, if none, then,' etc., cover the same field as said Employers' Liability Act, and are therefore superseded by it."

See, also, LaCasse v. N. O., T. & M. R. Co., 135 La. 129, 64 So. 1012, in which appears the following: "A statute of this state gives a right of action to a widow for the death of her husband caused by the negligence of another person. This statute is superseded, however, by the Federal Employers' Liability Act (35 Stat. 65, c. 149, [U.S.Comp.St.Supp.1909, p. 1171, 45 U.S.C.A. § 51 et seq.]) in all cases coming under the later statute; and, under the latter statute, the widow has no right of action, but the suit for her benefit must·be brought by the personal representative of the decedent."

■ Therefore, since the words "personal representative" mean only the administrator or the executor and do not· include the widow or the tutrix of the minor child, it is obvious that such tutor or such widow is without right to bring such suit and that this suit must be dismissed unless there is found merit in one of several of the points on which counsel rely to distinguish this case.

It is argued that the Public Belt is not a common carrier by railroad; that it is not engaged in interstate commerce; that the deceased was not employed in such interstate commerce at the time of his death and that a municipality which operates a railroad is not subject to the provisions of the federal statute, the Congress being without the power to subject such municipality, acting as an agency of the state, to such legislation.

We shall discuss these various contentions.

■ That the Public Belt is a common carrier by railroad, we think, is obvious. The operation of railroad locomotives and cars over tracks is the principal purpose for which it was organized and which is recognized by the statute under which it operates. That it is a carrier is plain, for "a carrier * * * is one who undertakes to transport persons or property from place to place." American Jurisprudence, vol. 9, p. 429. A common carrier is a carrier which "undertakes to carry for all people indifferently." Id. p. 431.

■ Was the employee engaged in work which should be considered as a necessary integral part of interstate commerce?

The bridge on which he worked was a completed structure over which there passed each day hundreds of freight and passenger cars filled with merchandise and passengers going to and coming from other states. According to the evidence, his employer, the Public Belt, over that bridge, destined to and from other states, hauls probably 5,000 cars each way each month. The bridge, then, is an integral part of the commerce which is carried on over it and which involves, each month, some 10,000 cars containing interstate merchandise and passengers.

That railroad employees who work on completed bridges, over which interstate commerce passes, are themselves engaged in interstate commerce, is firmly established,

and that this is true even though much intrastate commerce also moves over the same structures is well settled. See Peterson v. D., L. & W. R. Co., 229 U.S. 146, 33 S.Ct. 648, 57 L.Ed. 1125, Ann.Cas.1914C, 153; Shanks v. D., L. & W. R. Co., 239 U. S. 556, 36 S.Ct. 188, 60 L.Ed. 436, L.R.A. 1916C, 797; Southern Pacific Company v. Industrial Accident Commission et al., 251 U.S. 259, 40 S.Ct. 130, 64 L.Ed. 258, 10 A. L.R. 1181.

In Peterson v. L. R. & N. Co., 9 La.App. 714, 119 So. 759, this court held: "One engaged in the work of maintaining tracks, bridges, etc., in proper condition after they have become, and during their use as, instrumentalities of interstate commerce, is engaged in 'interstate commerce,' and this, even if those instrumentalities are used in both interstate and intrastate commerce." Syllabus. See, also, Bordelon v. N. O. Terminal Company, supra.

In Peak v. Pennsylvania R. Co., 121 Pa. Super. 373, 184 A. 295, 297, appears the following: "An employee engaged in repairing a bridge or track regularly used in both interstate and intrastate commerce is employed in interstate commerce."

In Philadelphia & Reading Ry. Co. v. Di Donato, 256 U.S. 327, 41 S.Ct. 516, 65 L.Ed. 955, the Supreme Court of the United States held: "A watchman employed on an interstate railroad at a public grade crossing to signal both interstate and intrastate trains and guard the tracks against disorder and obstruction, is employed in interstate commerce, irrespective of the interstate or intrastate character of the particular train he may be flagging when injured." Syllabus.

We consider it of no importance that the employee, at the time, was not working over water. That the structure was an integral part of interstate commerce is the important fact.

 We notice the argument that the line of railway of the Public Belt did not extend beyond the limits of the state and that, therefore, since it merely transports cars to and from other railroads which extend beyond those limits, it itself is not engaged in interstate commerce, and, therefore, is not subject to the federal act.

In Hamilton v. L. R. & N. Co., 162 La. 841, 111 So. 184, it was said:

"The defendant is a common carrier by railroad, and, although its own line does not extend beyond the limits of the state, yet it connects at both termini with other lines which do extend beyond the state, and a large volume of both interstate and intrastate commerce flows over its rails. Defendant is therefore actually engaged in interstate commerce; and the relative volume of the one business to the other has no bearing on the fact that it is so engaged. Philadelphia & R. R. Co. v. Polk, 256 U.S. 332, 41 S.Ct. 518, 65 L.Ed. 958; Chicago, K. & S. R. Co. v. Kindlesparker, (C.C.A.) 234 F. 1.

"It follows, therefore, that defendant's main track and bridges are instrumentalities of interstate commerce, as are also all sidings needed or useful in operating trains carrying interstate commerce."

In their contention that the Public Belt is not subject to the provisions of the federal statute, counsel rely on two theories. One is that the Public Belt, a public board of the City of New Orleans, which is itself acting under the authority of and as an agency of the state, is not subject to federal regulation, and the other is that the state statute—Act No. 179 of 1908—under which the Public Belt is operated and which specifically prohibits any director, officer, or employee of any state or interstate railroad from acting as a member of the Public Belt Commission or as an employee of the Public Belt, is a legislative declaration that the said Public Belt is not engaged in interstate commerce.

 We consider the first of these contentions—that the federal statute cannot be made to apply to a public board acting as the agent of a sovereign state. In the first place, we believe that the federal act is applicable and would be applicable to operations by the state itself if the state were directly engaged in the operation of a common carrier by railroad and that this would be true regardless of whether the state could be said to be acting in its governmental capacity or in its quality as a proprietary operator of a railroad. The Supreme Court of the United States, in United States v. People of State of California, 297 U.S. 175, 56 S.Ct. 421, 424, 80 L.Ed. 567, said: "Despite reliance upon the point both by the government and the state, we think it unimportant to say whether the state conducts its railroad in its 'sovereign' or in its 'private' capacity."

 But, if the distinction could be considered of importance, it is well settled that, in operating a belt or terminal railroad such as the Public Belt, municipalities act not in their governmental and sover-

eign capacity, but merely in a proprietary way. In Davis v. N. O. Public Belt R. Co., 155 La. 504, 99 So. 419, 420, 31 A. L.R. 1303, the Supreme Court of Louisiana said: "We think there could be but little doubt that, if the city of New Orleans or any other municipality was authorized to build and operate a steam railroad system for the private benefit of its inhabitants and for profit, the same would be done under its municipal or corporate powers, and not as a governmental duty." See, also, Solomon v. City of New Orleans, 156 La. 629, 101 So. 1; Vicksburg, S. & P. Ry. Co. v. Monroe, 164 La. 1033, 1034, 115 So. 136; Hall v. City of Shreveport, 157 La. 589, 102 So. 680.

■ But, without reference to whether, in such operation, a municipality is acting as a sovereign or merely in a proprietary capacity, it is well established that in such operations the municipality, or the board, or the commission, is subjected to and governed by the federal statute, because, where interstate commerce is concerned and the Federal Government has exercised that supervision and control which, under the Federal Constitution, article 1, § 8, cl. 3, it may exercise, all state statutes on the subject are necessarily subordinated to the federal enactments; and the federal statute which is involved here makes no distinction between common carriers by railroad operated by sovereign states and those operated by private corporations.

In Mathewes v. Port Utilities Commission, D.C., 32 F.2d 913, 915, the court said: "The question here presented is whether Congress has the power to make a municipality of a state liable for the torts of its agents when it is engaged in interstate commerce; and if it has that power, whether it has done so by the Federal Employers' Liability Act."

Note, also, the following language: "But it is argued that the Federal Employers' Liability Act, although using general terms, should not be construed to include municipalities. * * * Every reason which could be urged upon Congress for the passage of this act in reference to railroads operated by private capital can be urged with equal force as to railroads operated by municipalities. Congress intended to and did occupy the whole field, and all state laws upon the subject, insofar as they cover the same field, are superseded."

In United States v. California, supra, it was argued that the Federal Safety Appliance Act, 45 U.S.C.A. § 1 et seq., had no application to a railroad operated by a sovereign state. The court said: "We think it unimportant to say whether the state conducts its railroad in its 'sovereign' or in its 'private' capacity. That in operating its railroad it is acting with a power reserved to the states cannot be doubted. * * * The only question we need consider is whether the exercise of that power, in whatever capacity, must be in subordination to the power to regulate interstate commerce, which has been granted specifically to the national government."

The court then answered that question as follows: "No convincing reason is advanced why interstate commerce, and persons and property concerned in it should not receive the protection of the act whenever a state, as well as a privately-owned carrier, brings itself within the sweep of the statute, or why its all-embracing language should not be deemed to afford that protection."

■ Counsel's argument that the act of 1908 declares that neither the Public Belt nor its employees are engaged in interstate commerce, and that, therefore, it cannot be so engaged, is unsound for two reasons: In the first place, the statute makes no such declaration; it merely provides that no one employed by any other state or interstate carrier may be employed by the Public Belt in any capacity. This is not a declaration that all persons employed by the Public Belt are not engaged in interstate commerce, but is merely a safeguard against the employment by the said Public Belt of any one who is employed by any other carrier. It is a recognition of the wisdom of the biblical doctrine that no man can serve two masters.

■ In the second place, whether a carrier is engaged in interstate commerce is a question of fact, and a legislative declaration could not alter the fact. It is well settled that any common carrier by railroad, if engaged in interstate commerce, is subject to the federal statute and it is equally well settled that a municipality so engaged is subject to the act just as are all other carriers. It is not within the power of the state to remove such a carrier from the contemplation of the statute, so that, even if the act evi-

denced the intent which counsel seek to read into it, it could not be given that effect.

■ , On behalf of the plaintiff it is asserted that the deceased must be considered as having been within 'the protection of the state statute because section 1 of that statute—Act No. 20 of 1914—provides that it shall apply to "every person in the service of the State * * * or incorporated public board or commission in this State." But we have already shown that, if the statute could be construed as an attempt to control the rights as between common carriers by railroad and their employees while engaged in interstate commerce, it would to that extent be violative of the Federal Constitution, since the Congress has acted on the subject under the Constitution, which reserves to the Congress the exclusive right to regulate and control interstate commerce. That the statute could not apply in such case was recognized by the framers of the act, who, in section 30, as we have shown, excluded "any employer acting as a common carrier while engaged in interstate or foreign commerce by railroad," provided that the employee of such common carrier was injured or killed while so employed. As a matter of fact, section 30 was entirely unnecessary. The exclusion therein provided for was effected by the federal legislation on the subject, and such employees could not have been given the protection of. the state act even had section 30 not been included in the state act.

■ Lastly, counsel for plaintiff argue that the deceased was not engaged in interstate commerce because the purpose for which the bridge in question was constructed was to afford a highway crossing over the Mississippi river and that the use of the bridge by railroads and by the Public Belt was purely incidental. Whatever may have been the principal reason for the construction of the bridge, the fact remains that it now forms an indispensable part of the railroad line over which defendant's interstate commerce passes, and it therefore follows that the work in which the deceased was engaged was necessary in the conduct of the interstate business carried on by a common carrier by railroad.

Counsel argue that, if this result is sound then the employees of the City of New Orleans engaged in repairing streets on which interstate tracks are located are thus engaged in interstate commerce and are subject to the Federal Employers' Liability Act.

This is not so. The federal act applies only to employees of common carriers and not to employees of municipalities, unless, of course, those municipalities are engaged in interstate commerce by railroad and the work of the employees is necessary in the furtherance of that commerce. If the Public Belt, operating over the streets of the City of New Orleans, should require its employees, in the maintenance of its tracks incidentally to repair streets, then it is quite true that those employees, while repairing the tracks, would be engaged in interstate commerce, and this is true even though incidentally they might then be repairing streets as well as the tracks of their employer.

The deceased met his death while engaged in the furtherance of interstate commerce and as an employee of a common carrier by railroad. Only his personal representative may maintain an action for his death.

It is therefore ordered, adjudged, and decreed that the judgment appealed from is annulled, avoided, and reversed, the exception of no right of action is sustained, and plaintiff's suit is dismissed at her cost.

Reversed.